211 P.3d 1030 (2009)
In re Personal Restraint of Jerry D. WIATT Jr., Petitioner.
No. 35690-2-II.
Court of Appeals of Washington, Division 2.
June 30, 2009.
*1036 David B. Zuckerman, Attorney at Law, Seattle, WA, for Petitioner.
James C. Powers, Thurston County Prosecuting Attorney Office, Olympia, WA, for Respondent.
QUINN-BRINTNALL, J.
¶ 1 A jury found Jerry D. Wiatt Jr. guilty of furnishing liquor to a minor (six counts), third degree rape (two counts), attempted third degree rape (one count), sexual exploitation of a minor (two counts), voyeurism (two counts), and second degree rape (three counts). In addition, Wiatt pleaded guilty to voyeurism (one count) and communicating with a minor for immoral purposes (one count). On direct appeal, we reversed five additional convictions and remanded for retrial because those convictions were based on evidence procured in an unlawful search. Those counts are not subject to review under this petition.
¶ 2 In this personal restraint petition (PRP), Wiatt argues that (1) insufficient evidence supported his conviction on count XII, second degree rape of K.N.H.; (2) the trial court violated his right to a public trial; (3) the trial court violated his right to presence during a critical stage in the proceedings; (4) the trial court improperly excluded evidence under the rape shield law; (5) jurors relied on extrinsic evidence and the prosecutor invited this juror misconduct; (6) he cannot *1037 receive a fair trial due to outrageous government conduct; (7) the trial judge was biased; (8) he received ineffective assistance of counsel; and (9) newly discovered evidence warrants a reference hearing. Wiatt also submitted a supplemental brief raising a public trial issue that he did not raise in his original petition. And on March 17, 2009, he moved to file a declaration by Alisha Cochran.
¶ 3 We deny the petition and deny Wiatt's motion to file the declaration.

FACTS[1]
¶ 4 In 1999, Wiatt bought a house in Olympia. He and his roommates had frequent parties and provided alcohol to underage guests. In 2001, a 17-year-old guest reported to police that Wiatt, then about 28 years old, had raped her when she was extremely intoxicated. After the news media reported the allegation, several other women reported that Wiatt had also raped them.
¶ 5 The State ultimately charged Wiatt with five counts of second degree rape, two counts of third degree rape, four counts of sexual exploitation of a minor, four counts of voyeurism, one count of communication with a minor for immoral purposes, one count of unlawful imprisonment with sexual motivation, and eight counts of furnishing liquor to a minor. These charges involved 10 different women. The court severed 18 counts from the others for trial. As relevant here, these 18 counts involved seven women: A.C., R.R., H.A.K., K.N.H., Z.H., E.G., and J.M.B. Wiatt pleaded guilty to one count of voyeurism and one count of communication with a minor for immoral purposes. The remaining charges were dismissed.
¶ 6 The State also charged Johan Lo, Wiatt's cousin, with two counts of sexual exploitation of a minor and two counts of voyeurism. Lo pleaded guilty to one count of attempted voyeurism in exchange for his testimony against Wiatt.
¶ 7 The trial court held a pretrial hearing regarding a communication from Lo to an attorney. Specifically, the hearing concerned Lo's e-mail communication to the attorney who later became Wiatt's trial counsel and addressed whether that communication (1) created a conflict of interest for Wiatt's attorney and (2) was inadmissible under the attorney-client privilege. The trial court ordered that the courtroom be closed during the hearing. Wiatt's counsel agreed with the hearing closure but objected to Wiatt's exclusion from the hearing. Despite the objection, with which the prosecution joined, the trial court ordered Wiatt and two prosecutors to leave the courtroom for the conflict hearing.[2] Following the closed hearing, the trial court held that Lo did not have an attorney-client relationship with Wiatt's counsel and that Wiatt's counsel did not have a conflict of interest in representing Wiatt. It also ruled that Lo's e-mail communication was inadmissible under ER 403 because it was more prejudicial than probative.
¶ 8 The jury convicted Wiatt of second degree rape of A.C. (count II); two counts of sexual exploitation of a minor (counts III and IV); two counts of voyeurism regarding A.C. (counts V and VI); furnishing liquor to a minor, A.C. (count VII); third degree rape of J.M.B. (count VIII); furnishing liquor to a minor, J.M.B. (count IX); attempted third degree rape of H.A.K. (count X); second degree rape of K.N.H. (count XII); furnishing liquor to a minor, K.N.H. (count XIII); second degree rape of Z.H. (count XIV); furnishing liquor to a minor, Z.H. (count XV); third degree rape of R.R. (count XVI); furnishing liquor to a minor, R.R. (count XVII); and furnishing liquor to a minor, E.G. (count XVIII). Wiatt was sentenced on these counts as well as the counts to which he pleaded guilty, voyeurism regarding M.E.B. (count XXII) and communication with a minor, S.N.W., for immoral purposes (count XXIV).
*1038 ¶ 9 On direct appeal to this court, we reversed five counts after holding that the trial court erred when it denied Wiatt's motion to suppress video tape evidence that related to charges involving A.C. State v. Wiatt, noted at 127 Wn.App. 1008, review denied, 155 Wash.2d 1027, 126 P.3d 820 (2005). We remanded for retrial on those counts and they are not at issue in the present petition. In addition, as relevant here, we held that the evidence was sufficient to support Wiatt's conviction on count XII, second degree rape of K.N.H. Wiatt then filed a timely PRP and, two years later, a supplemental brief that raises an additional issue.[3]

ANALYSIS

Timeliness of Supplemental Brief
¶ 10 On November 13, 2008, Wiatt submitted a supplemental petition that raises a new issue regarding an alleged violation to the right to public trial during voir dire. Wiatt asked this court's permission to file the brief, which we granted. Shortly after he filed the supplemental brief, however, our Supreme Court issued In re Personal Restraint of Bonds, 165 Wash.2d 135, 196 P.3d 672 (2008), concerning the timeliness of amended or supplemental briefs for PRPs. Following In re Bonds, as we must, we hold that Wiatt's supplemental brief is time barred.
¶ 11 RCW 10.73.090(1) provides:
No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.
A PRP is a collateral attack on a judgment. RCW 10.73.090(2). In In re Bonds, our Supreme Court acknowledged that RAP 16.10(c) allows us to call for additional briefing at any stage when we consider a PRP, but it nevertheless held that the RCW 10.73.090(1) time bar is a statute of limitations that applies even if we request or authorize additional briefing. 165 Wash.2d at 140, 196 P.3d 672. Thus, even if the original petition was timely, a petitioner must demonstrate that his supplemental brief is not time barred if (1) he filed it after the time bar elapsed and (2) the supplemental brief adds a new claim that was not included in the original petition. In re Bonds, 165 Wash.2d 135, 196 P.3d 672.
¶ 12 Wiatt's judgment and sentence became final when this court issued a mandate on December 14, 2005. See RCW 10.73.090(3)(b). Accordingly, when Wiatt filed the present supplemental brief on November 13, 2008, more than one year had elapsed and we cannot review a petitioner's new claim unless he shows that either (1) the time bar does not apply because his judgment and sentence is facially invalid or it was not rendered by a court of competent jurisdiction or (2) one or more of the six exceptions to the time bar enumerated in RCW 10.73.100 applies.
¶ 13 Wiatt fails to argue that his supplemental brief is not time barred and we see no reason why it would not be. The only arguable exemption to the time bar is equitable tolling, a doctrine under which Wiatt presents facts but not argument.[4] In In re Bonds, our Supreme Court held that the time bar may be equitably tolled in the rare situation in which an amended PRP is untimely due to another's malfeasance, including bad faith, deception, or false assurances. 165 Wash.2d at 141-42, 196 P.3d 672. Wiatt asserts that he learned after oral argument that the voir dire transcript that he ordered was purportedly complete, but was actually missing 200 pages because the transcriptionist mistakenly failed to transcribe closed proceedings that she recorded on a different stenographic machine than the one she used for the open proceedings.
¶ 14 Wiatt's factual allegations do not support equitable tolling. They allege a mistake, not malfeasance. See In re Bonds, 165 Wash.2d at 141, 196 P.3d 672. And Wiatt *1039 fails to argue that he could not identify this issue without the missing transcript, such as by interviewing trial counsel or surmising from the existing transcripts that there was a closed hearing. Wiatt has not demonstrated equitable tolling or any other time bar exception. Accordingly, we cannot consider his supplemental brief on the merits. In re Bonds, 165 Wash.2d at 143-44, 196 P.3d 672. We now review the issues that Wiatt raised in his original, timely petition.

PRP Standards
¶ 15 As a threshold matter, we note that a personal restraint petitioner may not renew an issue that he raised and the court rejected on direct appeal unless the interests of justice require relitigation of that issue. In re Pers. Restraint of Taylor, 105 Wash.2d 683, 688, 717 P.2d 755 (1986). The petitioner may raise new issues, however, including both errors of constitutional magnitude that cause actual prejudice and nonconstitutional errors that constitute a fundamental defect and inherently result in a complete miscarriage of justice. In re Pers. Restraint of Cook, 114 Wash.2d 802, 812, 792 P.2d 506 (1990); In re Pers. Restraint of Hews, 99 Wash.2d 80, 87, 660 P.2d 263 (1983).
¶ 16 Regardless of whether he bases his challenges on constitutional or nonconstitutional error, a petitioner must support his petition with facts or evidence upon which his claims of unlawful restraint are based and not rely solely upon conclusory allegations. In re Cook, 114 Wash.2d at 813-14, 792 P.2d 506. The evidence presented must consist of more than speculation, conjecture, or inadmissible hearsay. In re Pers. Restraint of Rice, 118 Wash.2d 876, 886, 828 P.2d 1086, cert. denied, 506 U.S. 958, 113 S.Ct. 421, 121 L.Ed.2d 344 (1992). To obtain an evidentiary hearing, the petitioner must demonstrate that he has competent, admissible evidence to establish facts that would entitle him to relief. In re Rice, 118 Wash.2d at 886, 828 P.2d 1086. If the petitioner's evidence is based on knowledge in the possession of others, he may not simply state what he thinks those others would say but must present their affidavits or other corroborative evidence. State v. Bandura, 85 Wash.App. 87, 93, 931 P.2d 174 (quoting In re Rice, 118 Wash.2d at 885-86, 828 P.2d 1086), review denied, 132 Wash.2d 1004, 939 P.2d 215 (1997). The affidavits, in turn, must contain matters to which the affiants may competently testify. Bandura, 85 Wash.App. at 93, 931 P.2d 174 (quoting In re Rice, 118 Wash.2d at 885-86, 828 P.2d 1086).

Sufficiency of the Evidence
¶ 17 Wiatt attempts to renew an issue that we previously rejected on the merits-whether the evidence is sufficient to support K.N.H.'s incapacity to consent to having sexual intercourse with him as alleged in count XII, charging him with second degree rape. Wiatt may not renew this issue.
¶ 18 A petitioner may not renew an issue that was raised and rejected on direct appeal unless the interests of justice require reexamination of the issue. In re Taylor, 105 Wash.2d at 688, 717 P.2d 755. An issue is considered raised and rejected on direct appeal if the same ground presented in the petition was determined adversely to the petitioner on appeal and the prior determination was on the merits. In re Taylor, 105 Wash.2d at 687, 717 P.2d 755.
¶ 19 Here, Wiatt again argues that the evidence is insufficient to support the "incapacity to consent" element of his conviction on count XII, second degree rape of K.N.H. Wiatt raised this identical issue on direct appeal and we held that the evidence was sufficient because K.N.H. testified that she was mentally incapacitated and physically helpless during the rape. Wiatt, noted at 127 Wash.App. 1008, 2005 WL 950673. Wiatt presents no argument why we should reexamine this issue and we decline to do so.

Right To Public Trial
¶ 20 Wiatt next argues that the trial court violated his right to public trial by fully closing the courtroom and ushering him and members of the public out of it without considering the Bone-Club factors. We hold that Wiatt has not demonstrated actual prejudice, which is required, and that he waived appeal of this issue by explicitly agreeing to courtroom closure.

*1040 A. Standard of Review
¶ 21 We review de novo whether a trial court procedure violates the right to a public trial. State v. Brightman, 155 Wash.2d 506, 514, 122 P.3d 150 (2005). In the direct appeal context, we presume prejudice where the court proceedings violate this right. State v. Rivera, 108 Wash.App. 645, 652, 32 P.3d 292 (2001), review denied, 146 Wash.2d 1006, 45 P.3d 551 (2002). A defendant's failure to object at the time of a courtroom closure does not waive this right. Brightman, 155 Wash.2d at 514-15, 122 P.3d 150. The remedy for such a violation is to reverse and remand for a new trial if the defendant raises the issue in direct appeal or he demonstrates that he received ineffective assistance of appellate counsel for failing to raise the issue. In re Pers. Restraint of Orange, 152 Wash.2d 795, 814, 100 P.3d 291 (2004).
¶ 22 The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution each guarantee a criminal defendant the right to a public trial. State v. Russell, 141 Wash.App. 733, 737-38, 172 P.3d 361 (2007), review denied, 164 Wash.2d 1020, 195 P.3d 89 (2008). Additionally, article I, section 10 of the Washington Constitution states, "`Justice in all cases shall be administered openly,'" which provides the public itself a right to open, accessible proceedings. Seattle Times Co. v. Ishikawa, 97 Wash.2d 30, 36, 640 P.2d 716 (1982).
¶ 23 Article I, section 10's guarantee of public access to proceedings and article I, section 22's public trial right together perform complementary, interdependent functions that assure the fairness of our judicial system. Bone-Club, 128 Wash.2d at 259, 906 P.2d 325; see also State v. Easterling, 157 Wash.2d 167, 187, 137 P.3d 825 (2006) (Chambers, J., concurring) ("[T]he constitutional requirement that justice be administered openly is not just a right held by the defendant. It is a constitutional obligation of the courts.").
¶ 24 Protection of the right to public trial requires a trial court "to resist a closure motion except under the most unusual circumstances." Bone-Club, 128 Wash.2d at 259, 906 P.2d 325. A trial court may close a courtroom only after considering the five requirements enumerated in Bone-Club and entering specific findings on the record to justify the closure order.[5] 128 Wash.2d at 258-59, 906 P.2d 325. A trial court's failure to undertake the Bone-Club analysis, which directs the trial court to allow anyone present an opportunity to object to the closure, undercuts the guarantees enshrined in both article I, section 10 as well as article I, section 22. 128 Wash.2d at 258-59, 906 P.2d 325.

B. Relevant Facts
¶ 25 Here, the trial court held a hearing to determine whether communications from Lo to David Allen, then Wiatt's trial counsel, were admissible at Wiatt's trial and whether the communication created an attorney-client relationship between Lo and Allen that would create a conflict of interest preventing Allen from representing Wiatt. Lo's trial counsel moved for a closed hearing. Specifically, Lo moved for the following relief:
[W]e ask that it be a closed hearing because [the communications] are going to be ceased to be privileged regardless of what *1041 the Court rules if everybody is allowed to be in this courtroom.
. . . .
... So, Your Honor, again, I guess I would request that the court be cleared from anyone who other than, quite frankly, myself and obviously the court personnel and [Wiatt's attorney and the prosecutors], and I say that including Mr. Wiatt. ... I don't believe anyone, or anyone other than the parties I just mentioned, should be present to discuss the matter when the substance, I suspect, is going to be brought out in the open in this courtroom.
Report of Proceedings (RP) (Oct. 4, 2002) at 4, 6.[6] The trial court decided initially to meet with counsel in chambers to "talk ... about... reviewing the communication" and noted that he would then "see if there's a need to close the hearing further." RP (Oct. 4, 2002) at 7. The trial court excluded Wiatt from the in camera discussion.
¶ 26 After the in camera discussion, Wiatt's attorney made a record of what happened: "We had a chambers conference and there was the discussion back there about sealing or a[sic] emptying the courtroom which we agree with." RP (Oct. 4, 2002) at 7. He further noted that Wiatt wanted to be present at the hearing. The trial court stated, "I'm going to excuse the prosecution right now. I don't believe that you have standing in this particular issue." RP (Oct. 4, 2002) at 7-8. One prosecutor replied, "I agree with that, Your Honor, and we had planned to leave. [W]e are going to leave the courtroom. I would ask the Court to invite us back in if there's any issues that you feel that we're a necessary  or that you would like to hear from us further on." RP (Oct. 4, 2002) at 8-9. The court reporter then noted that the prosecutors exited the courtroom and "[t]he following proceedings were held in closed session." RP (Oct. 4, 2002) at 9.
¶ 27 Then, the trial court noted that the in camera discussion was informal, not on the record, and for the purpose of merely formulating the issues. The court noted that it concluded that the specific details of the communication between Lo and his attorney must be discussed and "that's the reason I closed the courtroom." RP (Oct. 4, 2002) at 10. The trial court then considered Wiatt's request to be present, held that this was not a critical stage in his proceedings, and told him that he must leave. The court reporter noted that Wiatt was escorted from the courtroom.
¶ 28 After the hearing, the trial court stated, "[t]his was a closed hearing." RP (Oct. 4, 2002) at 41. It continued, "I think we'll take about a 10-minute recess and allow the people to come back in, the defendant be returned to the courtroom and we'll proceed on other matters." RP (Oct. 4, 2002) at 42. The court reporter noted that the proceedings that followed were held in open court. It is undisputed that the trial court did not openly consider the Bone-Club factors nor did it give those present in the courtroom the opportunity to object to the closure or make findings on the record regarding the closure. See 128 Wash.2d at 258-59, 906 P.2d 325.

C. Actual Prejudice
¶ 29 To prevail on a constitutional claim in a PRP, however, the petitioner must demonstrate that a constitutional error caused actual prejudice. In re Cook, 114 Wash.2d at 813, 792 P.2d 506. Wiatt fails to meet this burden.
¶ 30 Wiatt does not argue that the alleged denial of a public trial caused him actual prejudice. Instead, he asserts that courts presume prejudice when defendants raise this issue on direct appeal and "[t]he same standards generally apply on collateral attack because the petitioner would be deprived of effective assistance on appeal if his appellate attorney failed to raise the issue." Br. of Pet'r at 60. Our Supreme Court has never ruled, however, that a personal restraint petitioner need not demonstrate actual prejudice when claiming a violation of his right to a public trial. Rather, in In re Orange, 152 Wash.2d at 814, 100 P.3d 291, the court addressed the petitioner's claim that he received ineffective assistance of appellate counsel because his attorney failed to raise a meritorious issue of denial of the *1042 right to public trial. The court agreed that appellate counsel was deficient and that the deficiency prejudiced his appeal because he would have prevailed on this issue if he had raised it. As explained below, Wiatt did not properly raise the issue of whether his direct appeal counsel performed deficiently for failing to raise this issue and, accordingly, that issue is not before this court.[7]
¶ 31 Personal restraint petitioners must demonstrate actual prejudice in this context and Wiatt provides no argument as to why the alleged public trial violation actually prejudiced him. Moreover, we fail to see how it could. Had the trial court recited the Bone-Club factors, it most likely would have closed the courtroom anyway, given that all the attorneys agreed to courtroom closure in order to protect potentially privileged communications. As Wiatt has failed to argue or prove actual prejudice, we deny his petition on this ground.

D. Waiver
¶ 32 Moreover, even if Wiatt had demonstrated actual prejudice, he invited this error. Under the invited error doctrine, a court should decline to review a claimed error if the appealing party induced the court to err. State v. Henderson, 114 Wash.2d 867, 870-71, 792 P.2d 514 (1990). This invited error doctrine applies even to manifest constitutional errors. State v. McLoyd, 87 Wash.App. 66, 70, 939 P.2d 1255 (1997), aff'd by State v. Studd, 137 Wash.2d 533, 973 P.2d 1049 (1999).
¶ 33 Here, Wiatt's counsel participated in an in camera discussion regarding courtroom closure and stated that he "agree[d] with" the trial court's decision to close the courtroom. RP (Oct. 4, 2002) at 7. Counsel invited this error and Wiatt therefore cannot complain of it on collateral attack. But see State v. Erickson, 146 Wash. App. 200, 208 n. 5, 189 P.3d 245 (2008) (majority holding that invited error doctrine did not apply to public trial right claim under the facts of that case). This claim fails.

E. Ineffective Assistance of Appellate Counsel
¶ 34 The dissent asserts that Wiatt properly raised a meritorious argument of ineffective assistance of counsel regarding this alleged error, citing two portions of Wiatt's briefing. We respectfully disagree that this issue is properly before the court.
¶ 35 The dissent first cites the portion of Wiatt's opening brief discussed above, which states only that "[t]he same standards [for presumption of prejudice] generally apply on collateral attack because the petitioner would be deprived of effective assistance on appeal if his appellate attorney failed to raise the issue." Br. of Pet'r at 60. This is not an argument that Wiatt received ineffective assistance of counsel. Rather, it is merely a statement (or misstatement, as the dissent apparently agrees) on the applicable rule of law. And it is not accompanied by any argument regarding Wiatt's counsel. This is utterly insufficient to raise the issue.
¶ 36 Second, the dissent cites a portion of Wiatt's reply brief in which he states, in full:
As Wiatt explained in the PRP, however, he maintains that appellate counsel was ineffective in failing to raise this issue in the PRP. ... There can be no strategic reason for failing to include such a claim on direct appeal when it requires relief with no showing of prejudice. ... Because appellate counsel was ineffective, the remedy is to apply the same standard of prejudice on collateral review, and remand for a new trial.
Reply Br. of Pet'r at 28-29. This statement is factually incorrect  Wiatt did not explain this alleged error in his PRP. And Washington appellate courts consistently refuse to consider arguments that were raised for the first time in a reply brief because doing so is both unfair to the respondent and a violation of our court rules. See RAP 10.3(c) (reply brief is limited to issues raised in response); Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992) (issue raised for the first time in reply brief is too *1043 late for consideration); State v. Lee, 82 Wash.App. 298, 313, 917 P.2d 159 (1996) (same), aff'd, 135 Wash.2d 369, 957 P.2d 741 (1998).
¶ 37 Beyond concerns for policy and compliance with rules, however, consideration of this issue is absolutely prohibited under In re Bonds, 165 Wash.2d 135, 196 P.3d 672, and the time bar statutes, RCW 10.73.090 and.100. Wiatt's judgment and sentence became final when this court issued a mandate on December 14, 2005, but he raised this issue for the first time when he filed his reply brief on July 17, 2007. See RCW 10.73.090(3)(b). This issue is therefore time barred unless Wiatt demonstrates why an exemption or exception to the time bar applies. RCW 10.73.090, .100. He makes no such argument and none is apparent. Accordingly, we have no power to consider the argument, even if we were to ignore our typical rule that a party waives an issue by raising it for the first time in a reply brief. For these reasons, we respectfully disagree with the dissent's consideration of this issue on the merits.

Right to Presence
¶ 38 Wiatt also argues that his exclusion from the closed hearing discussed above violated his right to be present during a critical stage of the pretrial proceedings. See In re Pers. Restraint of Berrysmith, 87 Wash.App. 268, 273, 944 P.2d 397 (1997) (discussing right to presence), review denied, 134 Wash.2d 1008, 954 P.2d 277 (1998). Again, the closed hearing addressed the admissibility of an email communication from the State's witness, Lo, to Wiatt's attorney and the possibility that Wiatt's defense attorney had an attorney-client relationship with Lo that caused a conflict of interest in his representation of Wiatt. Wiatt objected to the trial court's decision to deny him the right to remain in the courtroom. Although we are concerned about the denial of a defendant's right to presence for a conflict of interest hearing regarding his own attorney,[8] we deny the petition on this ground for lack of prejudice.
¶ 39 Again, Wiatt provides no argument explaining how this alleged constitutional error prejudiced him. Wiatt does not argue, and we do not see, how his absence could have prejudiced his case. He does not assert, for instance, that he would have contributed to the hearing or lodged objections, the trial court would have ruled differently if he was present, or he may have fired his attorney based on an actual or perceived conflict of interest. There is simply no reason to conclude that this alleged error caused Wiatt actual prejudice. As this is the minimum burden to prevail in a PRP, this argument fails.

Exclusion of Evidence Under the Rape Shield Law
¶ 40 Wiatt further argues that the trial court improperly excluded evidence under the rape shield law, RCW 9A.44.020, and ER 404(b). And he argues that he received ineffective assistance of appellate counsel because his attorney did not raise this claim in his direct appeal. We deny relief on these grounds.
¶ 41 Over Wiatt's objection, the trial court excluded testimonial evidence of the following: (1) shortly after the rape, R.R. had sex with another man; (2) before the rape, R.R. said she wanted to have sex with every man living at Wiatt's house and earlier had consensual intercourse with one roommate; (3) R.R. told Wiatt that he should have a pole installed in his kitchen so that she could dance for everyone; (4) J.M.B. performed a strip tease dance for several men, *1044 including Wiatt; and (5) when J.M.B. said she wanted to "get with" Wiatt, it meant she wanted to have sex with him.[9]
¶ 42 Wiatt argues the exclusion of this evidence denies his constitutional rights to due process, compulsory process, and confrontation. But the State properly rebuts that the issue is whether the trial court abused its discretion in excluding this evidence-our Supreme Court held that the proper exclusion of evidence under the rape shield law does not violate these constitutional rights. State v. Hudlow, 99 Wash.2d 1, 15-16, 659 P.2d 514 (1983). Thus, the correct question is whether the trial court abused its discretion when it excluded this evidence. Hudlow, 99 Wash.2d at 17-18, 659 P.2d 514. We hold that the trial court acted within the exercise of its sound discretion when it excluded this evidence under RCW 9A.44.020.[10]
¶ 43 Further, Wiatt has not satisfied the standard for relief from personal restraint for a nonconstitutional error, that the exclusion of this evidence constitutes a fundamental defect and inherently resulted in a complete miscarriage of justice. In re Cook, 114 Wash.2d at 812, 792 P.2d 506. And Wiatt's claim that his appellate counsel was ineffective for failing to raise this issue is meritless, as the trial court did not abuse its discretion and Wiatt cannot demonstrate prejudice. See In re Pers. Restraint of Maxfield, 133 Wash.2d 332, 344, 945 P.2d 196 (1997) (to prevail on ineffective assistance of appellate counsel claim, petitioner must show that counsel failed to raise an issue with merit and actual prejudice resulted from the failure). We deny the petition on these grounds.

Extrinsic Evidence
¶ 44 Wiatt raises two new issues regarding date rape drugs. He asserts that (1) the jury used extrinsic evidence in the form of an article, as opposed to common knowledge, during deliberations, and (2) the prosecutor committed misconduct by pursuing a case theory that Wiatt used date rape drugs, despite a motion in limine prohibiting evidence of such drugs. These arguments have no merit.

A. Juror Misconduct
¶ 45 Wiatt argues that he has new evidence, by way of a declaration, to prove that the jury considered extrinsic evidence in the form of an article about date rape drugs.[11] A jury commits misconduct when it "consider[s] extrinsic evidence and if it does, that may be a basis for a new trial." State v. Pete, 152 Wash.2d 546, 552, 98 P.3d 803 (2004). But Wiatt's declaration, even if true, does not demonstrate that the jury considered extrinsic evidence.
¶ 46 Diane Moye declares that she overheard a victim's mother say, during trial, that "she would ... get an article concerning *1045 date rape drugs to the jurors. She said she would either arrange for the article to be left in the jury room or have copies provided to the jurors some other way." Br. of Pet'r, App. L. Even if a true statement of a victim's mother's intent, this declaration is not competent, admissible evidence that establishes facts that would entitle Wiatt to relief. See In re Rice, 118 Wash.2d at 886, 828 P.2d 1086. The declaration states only that the mother said she planned to sneak extrinsic evidence to the jurors, not that she had done so. Moreover, during their extensive interviews on this issue, the jurors all stated that their knowledge of date rape drugs came from television. And Wiatt's investigator interviewed several jurors and all repeated that their information came from television. Wiatt, noted at 127 Wash.App. 1008, 2005 WL 950673. In summary, no evidence supports Wiatt's theory that the jurors considered an article about date rape drugs or any other extrinsic evidence and, accordingly, this claim fails as a matter of law.

B. Prosecutorial Misconduct
¶ 47 Wiatt next argues that the prosecutor committed misconduct by misleading defense counsel about the case theory it would pursue at trial. Specifically, Wiatt argues that the prosecutor elicited evidence that Wiatt used date rape drugs on the victims despite a motion in limine excluding such evidence. His trial attorneys also declare they would have pursued a different strategy at trial if they knew the jury would infer, based on this testimony, that Wiatt used date rape drugs. The trial judge reviewed this issue after Wiatt's motion for a new trial based on juror misconduct and noted (in dicta)[12] there was "no indication of misconduct in presenting the matter to the jury." RP (Dec. 16, 2002) at 51. We agree.
¶ 48 A petitioner alleging prosecutorial misconduct must show both improper conduct and prejudicial effect. State v. Brown, 132 Wash.2d 529, 561, 940 P.2d 546 (1997), cert. denied, 523 U.S. 1007, 118 S.Ct. 1192, 140 L.Ed.2d 322 (1998). To establish prejudice, the petitioner must show a substantial likelihood that the misconduct affected the jury's verdict. In re Pers. Restraint of Pirtle, 136 Wash.2d 467, 481-82, 965 P.2d 593 (1998). Where the asserted misconduct violates a constitutional right, the State must show the error is harmless beyond a reasonable doubt. State v. Powell, 126 Wash.2d 244, 267, 893 P.2d 615 (1995). But if the defendant does not object to alleged misconduct at trial, the issue of prosecutorial misconduct is waived unless the misconduct was "so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." State v. Stenson, 132 Wash.2d 668, 719, 940 P.2d 1239 (1997), cert. denied, 523 U.S. 1008, 118 S.Ct. 1193, 140 L.Ed.2d 323 (1998).
¶ 49 Wiatt does not argue that the prosecutor violated the motion in limine that excluded evidence of date rape drugs. Rather, he argues that "the prosecutors repeatedly elicited testimony from the alleged victims that in retrospect appear[s] calculated to suggest a date rape drug theory." Br. of Pet'r at 11 (emphasis added). He points to the prosecutor's questioning of R.R., E.G., K.N.H., and Z.H., in which each woman disclosed the amount of alcohol she consumed and seemed puzzled that her consumption resulted in such extreme intoxication and incapacity. Wiatt also points to closing argument in which the prosecutor argued that Z.H. was incapacitated, "whatever the reason." 13 RP at 2450.
¶ 50 Wiatt did not object to this questioning or argument and there is no basis to conclude this was prosecutorial misconduct. The prosecutor did not violate the motion in limine and was merely discharging his duty to prove that the women were incapacitated or did not consent when Wiatt had sex with them. It was the defense's theory that the women were lying because they could not have been incapacitated after consuming such relatively small amounts of alcohol. The State is permitted to respond to that theory and is, of course, permitted to elicit *1046 testimony in order to prove every element of the charges against the defendant. Doing so is not misconduct.
¶ 51 Moreover, Wiatt's argument that the prosecutor's conduct is improper when viewed "in retrospect" is not well taken. Br. of Pet'r at 11. In other contexts, courts make every effort to eliminate the "distorting effects of hindsight." Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (ineffective assistance of counsel); see also State v. Shove, 113 Wash.2d 83, 88, 776 P.2d 132 (1989) (criminal sentence modification); State v. Ryan, 103 Wash.2d 165, 170, 174, 691 P.2d 197 (1984) (reliability of child victim's statements); Long-Bell Lumber Co. v. Nat'l Bank of Commerce of Seattle, 35 Wash.2d 522, 529, 214 P.2d 183 (1950) (contract construction) (citing Carnation Lumber & Shingle Co. v. Tolt Land Co., 103 Wash. 633, 639, 175 P. 331 (1918)); Dep't. of Natural Res. v. Littlejohn Logging, Inc., 60 Wash.App. 671, 677, 806 P.2d 779 (1991) (reasonableness of attorney fees). The context of prosecutorial misconduct is no different. We look only at whether the prosecutor's conduct was improper and likely to cause prejudice at the time the prosecutor acted, rather than viewing the conduct through the distorting effects of hindsight, as Wiatt suggests. Here, the prosecutor did not commit misconduct.

Outrageous Government Conduct
¶ 52 Next, Wiatt asserts that the investigating detective and victim's advocate committed outrageous government misconduct that denied his right to due process.[13] He also rephrases the issue as prosecutorial misconduct. We deny the petition on these grounds.
¶ 53 In some situations, the conduct of law enforcement agents is "`so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.'" Lively, 130 Wash.2d at 18-19, 921 P.2d 1035 (quoting United States v. Russell, 411 U.S. 423, 431-32, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973)). The government conduct must "shock the universal sense of fairness." Lively, 130 Wash.2d at 19, 921 P.2d 1035. Outrageous government conduct will warrant dismissal only in the most egregious circumstances and not merely because the government acted deceptively. Lively, 130 Wash.2d at 20, 921 P.2d 1035.

A. Detective's Conduct
¶ 54 Wiatt argues that the lead detective's conduct was so outrageous that it denied his right to due process. He presents several declarations to support this claim and points to testimony about the detective's conduct.
¶ 55 To summarize, Wiatt claims that Detective Louise Adams conducted an investigation that was flawed in five ways. Wiatt's evidence, if true, shows the following.
¶ 56 First, Detective Adams took a statement from one witness, Amanda Chinn, and then told Chinn that what she said contradicted one of the victim's description of events, causing Chinn to say she was not sure about her statement. Second, Adams informed E.G. that her recollection of events differed from Z.H.'s, suggested facts to E.G. and obtained agreement regarding those facts, and pushed her about whether she was clear about what she saw. Third, Adams told J.M.B. that she had a video tape recording of Wiatt having sex with several women at once, although police never discovered such a tape recording.
¶ 57 Fourth, Detective Adams scared several victims and family members by telling them a rumor that Wiatt was a member of the Chinese Mafia. Last, she told a victim's mother that (1) police found evidence of date rape drugs at Wiatt's house and described the effect of date rape drugs on a person; (2) *1047 Wiatt was connected to the Asian Mafia; and (3) police had Wiatt's house under surveillance for over a year and, several times, girls ran out of his house half-naked after being raped but were too scared to prosecute. None of this information was true, but it caused Moye to feel "determined to see him put away for [a] long time." Br. of Pet'r, App. L.[14]
¶ 58 Public policy allows for some deceitful police investigatory conduct as long as it stays within reasonable bounds, generally circumscribed by outrageous and egregious circumstances not presented here. State v. Athan, 160 Wash.2d 354, 376-77, 158 P.3d 27 (2007); Lively, 130 Wash.2d at 20, 921 P.2d 1035. Wiatt presents facts that, if true, merely show that Detective Adams acted deceitfully. This is not a due process violation. See Athan, 160 Wash.2d at 376-77, 158 P.3d 27. Deception is a tool that police may legitimately use to gather evidence and motivate witnesses to be forthright and endure the ordeal of a trial. We note that, according to Wiatt's declarations, that tool worked in this case  several women did not want to cooperate with police until Adams's statements motivated them to do so. But it does not establish that the women testified falsely. Nothing that Wiatt presents here demonstrates that Adams committed outrageous, egregious, or shocking behavior that could give rise to a due process violation. This argument fails as a matter of law.

B. Victims' Advocate's Conduct
¶ 59 Next, Wiatt argues that the victims' advocate coached witnesses to cry. The evidence does not support this contention. And the contention, even if true, does not entitle Wiatt to relief.
¶ 60 Wiatt presents two declarations for this argument. Natalie Van Brunt declares she attended part of the trial and she
saw a woman in the hallway telling some of the girls to cry when they got on the stand. The same woman sat in the back of the courtroom during some of the testimony. During a couple of the girls' testimony, I saw this woman make a motion with her hand near her eye, seeming to indicate that the witness should cry. The girls did cry at times during their testimony.
Br. of Pet'r, App. O. And Wiatt's mother declared:
At some points during my son's trial, I was sitting outside of the courtroom in the hallway. I would sometimes see the victim's advocate, a woman named Kim, speaking with the alleged victims. Once or twice, I saw her making a motion with her hand near her eyes just before the witness went into the courtroom to testify. It was obvious that she was indicating that the witness should cry. To the best of my recollection, this happened with [J.M.B.] and/or [Z.H.].
Br. of Pet'r, App. S. The State presents a declaration by the victims' advocate stating that she did not coach any witness to cry.
¶ 61 Assuming, for argument's sake, that Wiatt's declarations are true, as a matter of *1048 law they do not demonstrate government misconduct. For example, Wiatt's mother's declaration only recounts that once or twice the victim advocate made a motion with her hand near her eyes while speaking with one or two victim witnesses. The declarations do not state that any witness cried in response to coaching. And even if witnesses did cry, this does not rise to the level of outrageous government misconduct, which must be shocking, most egregious, and so outrageous that it violates due process. Lively, 130 Wash.2d at 18-20, 921 P.2d 1035.
¶ 62 Moreover, Wiatt cites only one case to support his contention that coaching a witness to cry could be reversible error, but that case is not on point. In State v. Barker, 43 Wash. 69, 86 P. 387 (1906), our Supreme Court reversed a conviction after several attorneys who watched the trial, but did not participate, testified that they saw a courtroom spectator signal the complaining witness "by movements of the head, expressions of the face, and by motions of a lead pencil which he carried in his hand" to give certain answers. Barker, 43 Wash. at 70, 86 P. 387. The attorneys further testified that the "witness appeared to give answers to questions propounded in accordance with the apparent meaning and direction of said signals." Barker, 43 Wash. at 70, 86 P. 387. The witness later admitted to conforming her testimony to the signals' meanings. Barker, 43 Wash. at 70, 86 P. 387. The reversible error in Barker is indeed egregious and shocking behavior-today, this behavior constitutes the felony of witness tampering. RCW 9A.72.120. The behavior in Barker, however, is dissimilar to Wiatt's claim of coaching a witness to cry. As a matter of law, Wiatt's contentions do not support reversal on the ground of government misconduct.

C. Failure To Disclose Exculpatory Evidence
¶ 63 Wiatt also rephrases his government misconduct issue as one of prosecutorial misconduct, arguing that the prosecutor withheld exculpatory evidence about the improper investigation and attempts to coach witnesses to cry. This argument fails.
¶ 64 Our Supreme Court summarized the Brady[15] doctrine, regarding withholding exculpatory evidence, thus:
To comport with due process, the prosecution has a duty to disclose material exculpatory evidence to the defense and a related duty to preserve such evidence for use by the defense. Evidence is material and therefore must be disclosed if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. The question to be answered is not whether the defendant would more likely than not have received a different verdict with the evidence but whether the absence of the evidence undermines confidence in the verdict.
In re Pers. Restraint of Woods, 154 Wash.2d 400, 428-29, 114 P.3d 607 (2005) (internal quotations marks and citations omitted).
¶ 65 Wiatt fails to show that prosecutors withheld any information. He instead baldly asserts this as a fact, yet bald assertions are insufficient to support relief from personal restraint. Moreover, several declarants state that defense investigators interviewed them but did not ask questions about the investigation. Evidence of the first four out of five allegations of investigatory misconduct (as outlined above) was revealed at trial. Further, absence of this evidence does not undermine confidence in the verdict. This argument has no merit.

Judicial Bias
¶ 66 Wiatt next claims that he has presented new evidence to warrant a reference hearing on whether the trial judge was biased. We hold that Wiatt's evidence is insufficient to justify relief as a matter of law.
¶ 67 "Due process, the appearance of fairness doctrine and Canon 3(D)(1) of the Code of Judicial Conduct ... require a judge to disqualify himself if he is biased against a party or his impartiality may reasonably be questioned." State v. Dominguez, 81 Wash.App. 325, 328, 914 P.2d 141 (1996). A judge is presumed to act without *1049 bias or prejudice and a party challenging impartiality bears the burden of presenting evidence of actual or potential bias. State v. Post, 118 Wash.2d 596, 618, 619 n. 8, 826 P.2d 172, 837 P.2d 599 (1992). After this burden is met, we then apply an objective test to determine whether a judge's impartiality might reasonably be questioned by "`a reasonable person [who] knows and understands all the relevant facts.'" Sherman v. State, 128 Wash.2d 164, 206, 905 P.2d 355 (1995) (quoting In re Matter of Drexel Burnham Lambert, Inc., 861 F.2d 1307, 1313 (2d Cir. 1988)).
¶ 68 Wiatt presents declarations alleging that the trial judge's daughter attended several parties at Wiatt's house and drank alcohol there when she appeared, by sight, to look under age 20. One declarant also believes that the judge's daughter was friends with one of the victims, Z.H. These declarations are insufficient to warrant a reference hearing. Wiatt presents no admissible evidence that the trial judge had any knowledge that his daughter was connected to the case. Instead, Wiatt merely speculates:
It seems likely that [the judge's daughter] would have first-hand knowledge of the goings-on at the Wiatt residence, including the furnishing of alcohol to minors and the behavior of Mr. Wiatt and others at these parties. She may be a friend or acquaintance of others involved in these cases beside Z. [H]. She may have spoken with some of the trial witnesses  either before or after the trial  about the allegations in this case.
Based on this, a reasonable person might be concerned that [the judge's daughter] would communicate some of her personal knowledge to [her father]. A reasonable person might also be concerned that [the trial judge] might harbor some animus towards Mr. Wiatt for exposing his daughter to illegal and/or immoral conduct.
Br. of Pet'r at 56-57 (emphasis added). A petitioner's evidence must consist of more than speculation, conjecture, or inadmissible hearsay. In re Rice, 118 Wash.2d at 886, 828 P.2d 1086. Wiatt has not met his burden to demonstrate that he would be entitled to relief based on this evidence and therefore we deny his request for a reference hearing on the issue of judicial bias.

Ineffective Assistance of Counsel
¶ 69 Wiatt raises numerous claims of ineffective assistance of trial counsel. Specifically, he argues counsel was ineffective because he did not defend against a date rape drug theory and could have presented better cross-examination in five instances.
¶ 70 Essentially, Wiatt argues his counsel performed imperfectly in six choices out of the nearly 2,300-page trial transcript. Our Supreme Court has ruled, however, that
[a] defendant is not entitled to perfect counsel, to error-free representation, or to a defense of which no lawyer would doubt the wisdom. Lawyers make mistakes; the practice of law is not a science, and it is easy to second guess lawyers' decisions with the benefit of hindsight.
State v. Adams, 91 Wash.2d 86, 91, 586 P.2d 1168 (1978) (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir.1974)); see also State v. Johnston, 143 Wash.App. 1, 20, 177 P.3d 1127 (2007) (argument that counsel could have done a better job is inadequate to demonstrate ineffective assistance of counsel).
¶ 71 To demonstrate ineffective assistance of counsel, Wiatt must show that defense counsel's performance was deficient and that this deficiency caused him prejudice. State v. Thomas, 109 Wash.2d 222, 225, 743 P.2d 816 (1987). Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. State v. Horton, 116 Wash.App. 909, 912, 68 P.3d 1145 (2003). Counsel's legitimate trial strategy or tactics cannot provide a basis for a claim of ineffective assistance of counsel. State v. Aho, 137 Wash.2d 736, 745, 975 P.2d 512 (1999). Prejudice occurs when, but for the deficient performance, there is a reasonable probability that the outcome would have differed. In re Pirtle, 136 Wash.2d at 487, 965 P.2d 593. To prevail on a claim of ineffective assistance of counsel, the petitioner must overcome a strong presumption that defense counsel was effective. State v. McFarland, 127 Wash.2d 322, 335, 899 P.2d 1251 (1995).
*1050 ¶ 72 Wiatt first rephrases the date rape drugs issue, addressed above, as one of ineffective assistance of counsel. He argues that defense counsel should have known that the jury would infer that date rape drugs were an issue and, therefore, should have presented a defense to this inference. He presents declarations showing that trial counsel could have defended this theory because there was no forensic evidence of such drugs, friends knew Wiatt opposed using illegal drugs, and people who knew Wiatt would have testified they never saw any indication that Wiatt possessed or used date rape drugs.
¶ 73 But Wiatt's argument, again, is premised solely on the benefit of hindsight. This approach is impermissible and inadequate to support an ineffective assistance of counsel claim. Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Viewed at the time of trial, Wiatt's counsel made sound tactical decisions. He argued that there was no direct evidence that Wiatt used date rape drugs and he filed a motion in limine to exclude mention of them. He prevailed. He then tried to impeach the witnesses' testimony about their incapacity by arguing that the amount of alcohol they consumed was insufficient to produce that result. This was a sound approach. Wiatt's theory could have persuaded the jury, but instead it went in an unexpected direction of inferring, based on information they learned in the course of their lives from television, that Wiatt could have used date rape drugs on his victims. After Wiatt's counsel investigated the jury's rationale and learned that it relied on this inference, counsel took the prudent approach of moving for a new trial based on juror misconduct. Although he did not prevail, we cannot view his performance as deficient simply because he was not successful or did not foresee that the jury would consider information they learned in their daily lives. Wiatt's counsel was not constitutionally ineffective.
¶ 74 Wiatt's remaining five arguments allege imperfections during cross-examination. He argues that his counsel (1) did not recall Lindsey Howard for further cross-examination; (2) neglected to ask Z.H. during cross-examination whether she was thinking about suing Wiatt; (3) did not cross-examine Kevin Barlow about whether Z.H. seemed intoxicated or why she was mad when she left Wiatt's house after the rape; (4) asked H.A.K. whether she had reported the rape to anyone for one year, opening the door to rebuttal testimony about her earlier reporting of the crime; and (5) never impeached J.M.B.'s testimony that she did not say she would like to "get with" Wiatt, although Justin Allison could have provided impeachment testimony. "[E]ven a lame cross-examination will seldom, if ever, amount to a Sixth Amendment violation." In re Pirtle, 136 Wash.2d at 489, 965 P.2d 593. The allegations here do not rise to the level of deficient performance simply because, with the benefit of hindsight, Wiatt believes counsel could have performed more perfectly. See Johnston, 143 Wash.App. at 20, 177 P.3d 1127. Wiatt has not demonstrated that he received ineffective assistance from his counsel.

Newly Discovered Evidence
¶ 75 Wiatt claims that he has presented newly discovered evidence that could entitle him to a new trial. We disagree.
¶ 76 Under RAP 16.4, an "appellate court will grant appropriate relief to a petitioner" if "[m]aterial facts exist which have not been previously presented and heard, which in the interest of justice require vacation of the conviction, sentence, or other order entered in a criminal proceeding." RAP 16.4(a), (c)(3). We apply the same standard under RAP 16.4(c)(3) for a new sentencing proceeding as a motion for new trial based upon newly discovered evidence. In re Pers. Restraint of Brown, 143 Wash.2d 431, 453, 21 P.3d 687 (2001) (citing In re Pers. Restraint of Lord, 123 Wash.2d 296, 319-20, 868 P.2d 835 (1994)). The petitioner must establish
that the evidence (1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching. The absence of any one of the five factors is *1051 grounds for the denial of a new proceeding.
In re Brown, 143 Wash.2d at 453, 21 P.3d 687 (internal quotation marks omitted) (quoting State v. Williams, 96 Wash.2d 215, 222-23, 634 P.2d 868 (1981)); see also CrR 7.5(a)(3). Further, the petitioner must demonstrate that the allegedly "new" evidence is admissible under the rules of evidence and would entitle him to relief; the petitioner fails to meet this burden unless the declarant attests that he or she will testify to the declaration's contents at a reference hearing. See In re Rice, 118 Wash.2d at 886, 828 P.2d 1086.

A. Admissibility and Entitlement to Relief Threshold
¶ 77 Wiatt presents several declarations that fail to meet the threshold burden that they would be admissible and entitle him to relief. Moreover, the declarants do not attest that they would testify to the declaration's contents at a reference hearing. See In re Rice, 118 Wash.2d at 886, 828 P.2d 1086. Accordingly, we cannot consider the merits of declarations by Allison, Joel Hawkins, Van Brunt, or Moye. Indeed, Hawkins and Moye both attest that they did not want to help Wiatt. Further, Wiatt's counsel presents a transcribed interview by Cochran, which was not given under oath, and asserts that he could successfully subpoena her to testify to its content at a reference hearing. But Cochran refused to submit a declaration and there is no indication that she would testify consistent to her police interview. Wiatt has failed to make a prima facie showing that Cochran or these four declarants would present admissible evidence entitling him to relief. Thus, we do not consider this evidence on the merits.

B. Newly Discovered Evidence
¶ 78 Wiatt has also failed to allege facts sufficient to prove that three pieces of allegedly new evidence are, in fact, new evidence under CrR 7.5. Thus, we decline to consider as new evidence the declarations by Allison, Ian Klotz, and Van Brunt.
¶ 79 Wiatt fails to present evidence to support the conclusion that three pieces of allegedly "new" evidence are indeed new. Allison declares that he declined to testify regarding K.N.H. because K.N.H.'s boyfriend threatened to hurt Allison if he testified unfavorably on the charges involving her. But Allison also declares that he told Wiatt's trial attorneys that he did not want to testify concerning K.N.H. due to the threats and Wiatt's attorneys agreed he would not have to. Thus, Allison's information about K.N.H. is not newly discovered evidence but readily obtainable evidence not utilized as a matter of strategy and, therefore, fails to meet the threshold requirement for a new trial.
¶ 80 Two other declarations contain no indication that the evidence was not available at the time of trial. As this is a PRP, Wiatt has the burden of alleging facts that would entitle him to relief and his failure to do so invalidates his bald assertion that this evidence is new. In re Rice, 118 Wash.2d at 886, 828 P.2d 1086. Klotz declares that no one from the defense or prosecution contacted him until recently, but nothing in the declaration demonstrates that this was because he was not a known or readily obtainable witness, rather than due to strategy. Similarly, Van Brunt's declaration contains no suggestion that she was an unknown or unavailable witness. The trial attorneys also submitted declarations but did not address whether this evidence was available at trial.
¶ 81 These declarations similarly lack any suggestion that his trial counsel could not have obtained this evidence by the exercise of due diligence. Accordingly, we hold that it is not newly discovered evidence that could justify a new trial and, as a matter of law, fails to meet the threshold requirements for a new trial motion.

C. Kevin Murphy's Declaration
¶ 82 Murphy's declaration also does not justify a reference hearing for various reasons. Murphy declares that he is willing to testify that he (1) never saw or heard anything that would lead him to infer that Wiatt would use date rape drugs and he does not think Wiatt would do so because "[t]here was no shortage of women who were happy to have sex with him," Br. of Pet'r, App. M; (2) never saw or heard any sign that women *1052 at Wiatt's house were raped or too intoxicated to consent to sex; (3) J.M.B. performed a strip tease at Wiatt's house and was comfortable with people seeing her in her underwear; (4) saw Z.H. and Wiatt "making out" in the hot tub and go to Wiatt's room; Z.H. was drinking but did not seem intoxicated and had no trouble talking or moving around, Br. of Pet'r, App. M; and (5) saw K.N.H. at Wiatt's house cuddling with Wiatt and walking upstairs with him, presumably to have sex, and K.N.H. "seemed fine [and] was not out of it," Br. of Pet'r, App. M. And Wiatt's attorneys declare that they tried to contact Murphy repeatedly to testify but could not get in contact with him, thus satisfying the burden to raise a material fact regarding the application of due diligence to obtain this evidence for trial.
¶ 83 Statements one through three above are inadmissible or immaterial. First, Murphy's observations and opinions about date rape drugs are inadmissible under the trial court's motion in limine and are thus immaterial to trial. Second, Murphy's general observations about women who were not alleged victims have little probative value and do not impact the result at trial. Third, whether J.M.B. danced for men is also inadmissible under the trial court's rape shield law ruling and it is immaterial to the trial issues.
¶ 84 Statements four and five are merely cumulative. At trial, Wiatt testified that Z.H. was not intoxicated and appeared happy and lucid. Anthony Grant corroborated this testimony and specifically noted that Z.H. had no trouble walking. Wiatt and Howard testified that Z.H. did not seem intoxicated and was flirting with Wiatt that night. Even if true, Murphy's declaration does not provide grounds for relief because it does not contain any admissible, material evidence that is not merely cumulative and therefore the declaration is unlikely to change the result of trial. Accordingly, Wiatt has not demonstrated grounds for a reference hearing based on new evidence.
¶ 85 We deny Wiatt's March 17, 2009 motion to file a declaration by Cochran because the declaration does not contain allegations that the evidence is newly discovered.
¶ 86 Wiatt's petition is denied.
I concur: HUNT, J.
VAN DEREN, C.J.
¶ 87 I respectfully dissent. Under our Supreme Court's decision in In re Pers. Restraint of Orange, 152 Wash.2d 795, 100 P.3d 291 (2004), I would hold that appellate counsel's failure on direct appeal to challenge the trial courtroom's closure constituted ineffective assistance. Furthermore, I would hold that Wiatt could not waive his or the public's right to public court proceedings without the trial court's compliance with the Bone-Club[16] requirements. Accordingly, I would grant Wiatt's personal restraint petition (PRP), reverse his convictions, and remand for a new trial.

I. Orange

¶ 88 In Orange, the trial court questioned all members of the jury venire in chambers about their written answers to eight questions. The trial court prohibited the defendant's and the victim's families from watching voir dire that took place in the courtroom due to space constraints. Orange, 152 Wash.2d at 801-02, 100 P.3d 291.
¶ 89 On direct appeal, Orange's counsel failed to raise the issue of whether the trial court violated the public trial right by failing to comply with the Bone-Club closure requirements before ordering the courtroom's closure. Orange, 152 Wash.2d at 814, 100 P.3d 291. Orange subsequently filed a PRP raising this constitutional violation. Orange, 152 Wash.2d at 803, 100 P.3d 291.
¶ 90 On collateral review, our Supreme Court acknowledged that a petitioner must demonstrate "actual and substantial prejudice" to obtain relief and that the appellate court does not presume that constitutional errors that are per se prejudicial on direct appeal are prejudicial for the purposes of PRPs. Orange, 152 Wash.2d at 804, 100 P.3d 291 (quoting In re Pers. Restraint of Lile, 100 Wash.2d 224, 225, 668 P.2d 581 (1983)). *1053 Nonetheless, the court held that the trial court's failure to comply with the Bone-Club requirements violated Orange's constitutional right to a public trial. Orange, 152 Wash.2d at 812, 100 P.3d 291. Furthermore, the court reasoned that, had Orange's appellate counsel raised the constitutional violation on direct appeal, the remedy for the presumptively prejudicial error would have been remand for a new trial. Finally, it held that the failure of Orange's appellate counsel to raise the constitutional issue on direct appeal constituted ineffective assistance and warranted remand for a new trial. Orange, 152 Wash.2d at 814, 100 P.3d 291.
¶ 91 The majority here asserts that this issue is not before the court. Majority at 1041-42. But contrary to the majority's assertion, Wiatt, citing to Orange, argues, "The same standards generally apply on collateral attack because the petitioner would be deprived of effective assistance on appeal if his appellate attorney failed to raise the issue." Br. of Appellant at 60 (emphasis added). Wiatt, again citing to Orange, further states that "appellate counsel was ineffective in failing to raise this issue" and, "[b]ecause appellate counsel was ineffective, the remedy is to... remand for a new trial."[17] Reply Br. of Appellant at 28-29. Therefore, Wiatt has raised ineffective assistance of counsel as an issue before this court.
¶ 92 Accordingly, this case presents circumstances identical to those in Orange. There is no dispute that the trial court ordered a closure of the courtroom and that the trial court failed to comply with the Bone-Club requirements. Majority at 1041. Furthermore, the trial court's decision to close the courtroom was not accompanied by specific findings.
¶ 93 Wiatt's counsel failed to raise this constitutional violation on direct appeal. Failure to raise the constitutional violation here was not the "product of `strategic' or `tactical' thinking," but was deficient and prejudicial to Wiatt, as it deprived Wiatt "of the opportunity to have the constitutional error deemed per se prejudicial on direct appeal." Orange, 152 Wash.2d at 814, 100 P.3d 291 (quoting State v. McFarland, 127 Wash.2d 322, 336, 899 P.2d 1251 (1995)). Thus, the remedy in this case is to remand for a new trial. Orange, 152 Wash.2d at 814, 100 P.3d 291.

II. No Waiver
¶ 94 While the majority correctly states that Wiatt's trial counsel "agree[d] with," Majority at 1041-42 (quoting Report of Proceedings (Oct. 4, 2002) at 7), the trial court's decision to close the courtroom and our Supreme Court's decision in State v. Easterling, 157 Wash.2d 167, 137 P.3d 825 (2006) require us to hold that Wiatt did not waive the right to raise the violation of both his and the public's right to a public trial.
¶ 95 In Easterling, the trial court ordered a joint trial for codefendants Easterling and Jackson. On the first day of trial, Jackson moved to dismiss the charges against him and to sever his trial from Easterling's. Jackson's trial counsel requested that the trial court close the courtroom for argument on Jackson's motions. Easterling, 157 Wash.2d at 171-72, 137 P.3d 825. The trial court granted Jackson's request "[w]ithout seeking or receiving the State's or Easterling's input or objection, ... specifically directed Easterling, his attorney, and others to leave" the courtroom. Easterling, 157 Wash.2d at 172, 137 P.3d 825. Jackson subsequently pleaded guilty. Trial proceeded against Easterling and resulted in his conviction. Easterling, 157 Wash.2d at 172-73, 137 P.3d 825.
*1054 ¶ 96 On review, our Supreme Court noted that, "in derogation of Bone-Club, the trial court closed the courtroom without making specific findings on the record, without asking Easterling, his attorney, or the State whether they objected, and without weighing either the public's or Easterling's interest in keeping the courtroom proceedings open against Jackson's interest in closing the proceedings." Easterling, 157 Wash.2d at 176 n. 7, 137 P.3d 825. It further noted, "under the Bone-Club criteria, the burden is placed upon the trial court to seek the defendant's objection to the courtroom closure. The record in this case shows that the trial court did not affirmatively provide Easterling with such an opportunity." Easterling, 157 Wash.2d at 176 n. 8, 137 P.3d 825. Finally, in rejecting the State's argument that Jackson had waived either Easterling's or the public's right to a public trial, the court concluded, "[i]t was the request to close itself, and not the party who made the request, that triggered the trial court's duty to apply the five-part Bone-Club requirements." Easterling, 157 Wash.2d at 180, 137 P.3d 825.
¶ 97 In reaching its holding, the court stated:
[W]e rely heavily upon our prior decisions relating to article I, section 22 of our state constitution, which require trial courts to strictly adhere to the well-established guidelines for closing a courtroom and upon public policy as made manifest by the federal and state constitutions which favors keeping criminal judicial proceedings open to the public unless there is a compelling interest warranting closure. In light of these precedents, we conclude that Jackson's motion to server his trial from Easterling's pertained to Easterling's trial and thereby implicated his right to a public trial under the Washington Constitution.
Easterling, 157 Wash.2d at 177, 137 P.3d 825 (citations omitted). Ultimately, the court held that the trial court's closure violated both Easterling's and the public's right to a public trial and constituted reversible error because the trial court failed to comply with the Bone-Club requirements. Easterling, 157 Wash.2d at 182, 137 P.3d 825.
¶ 98 Here, the majority states that Wiatt's counsel, by agreeing to the closure, invited the trial court's error, barring Wiatt's collateral attack. Majority at 1041-42. But Easterling clearly states that it is the closure request itself that triggers the trial court's independent obligation under Bone-Club to (1) ascertain whether the defendant, his counsel, or the State object, (2) weigh the public's and the excluded defendant's interest in an open process against the interests of the party requesting closure, and (3) make specific findings on the record. Easterling, 157 Wash.2d at 176 n. 7, 137 P.3d 825.
¶ 99 Moreover, as in Easterling, the majority also recognizes that it is undisputed that the trial court did not give those present in the courtroom an opportunity to object to the closure. Majority at 1041. Because Easterling emphasized that the trial court must seek, not only any counsel's objection but also the defendant's objection to closure, Wiatt's counsel cannot have waived Wiatt's public trial right when Wiatt objected on the record to the closure order excluding him from the proceedings.
¶ 100 Indeed, the need to inquire about Wiatt's position on closure appears significant here. The closed hearing to which Wiatt's counsel agreed involved whether Wiatt's counsel himself had a conflict of interest that prevented him from representing Wiatt. Majority at 1040-41. Therefore, the trial court should have specifically sought and weighed Wiatt's input before ordering closure and exclusion.
¶ 101 And Wiatt could not waive the public's right to a public trial. As Easterling makes clear, the public's right to a public trial exists separately from the defendant's right. 157 Wash.2d at 179, 137 P.3d 825. Here, the trial court neither gave anyone present in the courtroom an opportunity to object to the closure nor made specific findings showing that it weighed a compelling interest warranting the public's exclusion from the proceedings against "the public's interest in maintaining unhindered access to judicial proceedings." Easterling, 157 Wash.2d at 179, 137 P.3d 825. Thus, the trial court violated both Wiatt's and the public's right to a public trial when it ordered a *1055 closure without complying with the Bone-Club requirements.

III. Conclusion
¶ 102 Neither a criminal defendant nor the public possess an absolute right to public trial proceedings. Easterling, 157 Wash.2d at 174, 137 P.3d 825. And the mandatory, "plainly articulated guidelines" protecting the right to a public trial do not ensure that either the defendant or the public are never excluded from trial proceedings. Orange, 152 Wash.2d at 821, 100 P.3d 291. Rather, the Bone-Club requirements establish that trial courts must resist a closure motion "except under the most unusual circumstances" and must weigh the competing interests and make specific findings on the record. Easterling, 157 Wash.2d at 175, 137 P.3d 825 (emphasis omitted) (quoting Bone-Club, 128 Wash.2d at 259, 906 P.2d 325).
¶ 103 Compliance with the Bone-Club requirements reaffirms the public trial guarantee to Washington citizens and assures that they are excluded from trial proceedings only after "careful, case-by-case analysis" of a closure motion by the court most familiar with the trial proceedings  a guarantee so important that this state's founders saw fit to enshrine it in both article I, section 10 and article I, section 22 of our constitution. Bone-Club, 128 Wash.2d at 258, 906 P.2d 325. Thus, a trial court's failure to comply with the Bone-Club requirements undercuts this important public trial right, as the majority acknowledges. Majority at 1040-41.
¶ 104 Accordingly, when faced with circumstances identical to those in the present case, our Supreme Court stated, "Our unanimous decisions in Bone-Club, [Allied Daily Newspapers of Wash. v.] Eikenberry, [121 Wash.2d 205, 210-12, 848 P.2d 1258 (1993)], and [Seattle Times Co. v.] Ishikawa, [97 Wash.2d 30, 37-39, 640 P.2d 716 (1982)] prescribed and applied the constitutional requirements for closure so clearly and emphatically that approving the trial court's actions in this case would undermine 20 years of consistency on this legal issue." Orange, 152 Wash.2d at 822, 100 P.3d 291. Just as the trial court must follow the Bone-Club requirements, we must follow over two decades of binding precedent on this issue. Accordingly, I would grant Wiatt's PRP, reverse his convictions, and remand for a new trial.
NOTES
[1] As the facts are well known to the parties, are largely irrelevant to this petition, and implicate victims' privacy, we only briefly summarize them here.
[2] Although it stated compelling reasons to close the courtroom, the court did not articulate the courtroom closure factors set out in State v. Bone-Club, 128 Wash.2d 254, 258-59, 906 P.2d 325 (1995).
[3] This court issued a mandate on December 14, 2005, and Wiatt filed this petition on December 13, 2006, and a supplemental brief on November 13, 2008.
[4] This is understandable, as In re Bonds was not released until after Wiatt briefed the issue and, while allowing additional briefing, we specifically ordered that Wiatt may not file a reply brief.
[5] Relying on Allied Daily Newspapers v. Eikenberry, 121 Wash.2d 205, 210-11, 848 P.2d 1258 (1993), the Bone-Club court articulated five criteria to "assure careful, case-by-case analysis of a closure motion":

1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a "serious and imminent threat" to that right.
2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.
3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.
4. The court must weigh the competing interests of the proponent of closure and the public.
5. The order must be no broader in its application or duration than necessary to serve its purpose.
128 Wash.2d at 258-59, 906 P.2d 325 (alteration in original).
[6] All cites to the RP are from the record in cause number 30168-7-II.
[7] We also note that the court published In re Orange after oral argument in Wiatt's direct appeal.
[8] Other courts and commentators have concluded, under legal standards almost identical to Washington's, that a criminal defendant has a right to presence for factual hearings regarding whether his attorney had a conflict of interest. See State v. Lopez, 271 Conn. 724, 859 A.2d 898 (2004); People v. Grigsby, 47 Ill.App.3d 812, 816, 8 Ill.Dec. 243, 365 N.E.2d 481 (1977); Anne Bowen Poulin, Strengthening the Criminal Defendant's Right to Counsel, 28 Cardozo L.Rev. 1213, 1265-70 (2006). In the only relevant Washington case, this court held that no such right existed for a ministerial hearing when the bar association had already determined that defense counsel had a conflict. State v. Rooks, 130 Wash.App. 787, 797-801, 125 P.3d 192 (2005), review denied, 158 Wash.2d 1007, 143 P.3d 830 (2006). Because Wiatt has not demonstrated prejudice, however, the merits of this issue are not before us.
[9] Here, the trial court allowed testimony that J.M.B. wanted to "get with" Wiatt but excluded testimony about what that statement supposedly meant.
[10] In relevant part, that statute reads:

(2) Evidence of the victim's past sexual behavior including but not limited to the victim's marital history, divorce history, or general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards is inadmissible on the issue of credibility and is inadmissible to prove the victim's consent except as provided in subsection (3) of this section. ...
(3) . . . .
(d) [I]f the court finds that the evidence proposed to be offered by the defendant regarding the past sexual behavior of the victim is relevant to the issue of the victim's consent; is not inadmissible because its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice; and that its exclusion would result in denial of substantial justice to the defendant; the court shall make an order stating what evidence may be introduced by the defendant, which order may include the nature of the questions to be permitted. The defendant may then offer evidence pursuant to the order of the court.
RCW 9A.44.020. The statute also provides a procedure to offer this evidence. RCW 9A.44.020(3). Wiatt apparently complied with that procedure.
[11] Despite resolving a similar issue on direct appeal, this claim is novel because Wiatt now argues that the jury had extrinsic evidence in the form of an article, rather than knowledge gathered from popular culture, and counsel did not raise this claim on direct appeal. See Wiatt, noted at 127 Wash.App. 1008, 2005 WL 950673.
[12] At trial, Wiatt did not argue prosecutorial misconduct, but only juror misconduct. Wiatt, noted at 127 Wash.App. 1008, 2005 WL 950673.
[13] Wiatt also cites several prosecutorial misconduct cases for his claim of police misconduct. The doctrine of prosecutorial misconduct is based on prosecutors' heightened duty, as quasi-judicial officers, to ensure the accused receives a fair trial. State v. Huson, 73 Wash.2d 660, 663, 440 P.2d 192 (1968), cert. denied, 393 U.S. 1096, 89 S.Ct. 886, 21 L.Ed.2d 787 (1969). Police are not quasi-judicial officers and are not tasked with ensuring the right to fair trial. The doctrine of prosecutorial misconduct, therefore, does not apply to police action. Instead, courts review police action for outrageous government misconduct, the standard that we apply here. State v. Lively, 130 Wash.2d 1, 18-19, 921 P.2d 1035 (1996).
[14] Wiatt also claims that Detective Adams "took advantage of a `victims' support group' to further influence the witnesses," but the declaration he presents shows only that Adams referred parents to a support group and attended the first meeting. Br. of Pet'r at 44. Even if true, this does not show that Adams had any particular motivation regarding the support group and we do not assume an unsavory one.

Further, Wiatt asserts that Detective Adams "intimidated Joel Hawkins into declining to testify for the defense." Br. of Pet'r at 49. Again, the relevant declaration shows no such thing. Instead, Hawkins declares:
Adams suggested to me that my connection to Jerry Wiatt might cause me problems with my job. I was a high school teacher at the time. ...
... After speaking with the Detective, I was very concerned about getting in some sort of trouble because I had lived with Jerry Wiatt. I may not have been entirely forthcoming when I was interviewed by a defense investigator because I was worried that there could be some adverse consequences to me if I were seen as helping the defense.
Br. of Pet'r, App. G. The allegations in this declaration do not show police intimidation, as Wiatt alleges. The declaration does not show that Detective Adams's connections with Wiatt could not hurt him professionally, he did not give a truthful and complete story to the defense, or that Adams's concern affected the defense counsel's choice not to have Adams testify. This declaration is irrelevant to Wiatt's claim of outrageous government misconduct.
[15] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[16] State v. Bone-Club, 128 Wash.2d 254, 906 P.2d 325 (1995).
[17] Wiatt also argues that, because appellate counsel was ineffective, part of the remedy for a violation of the constitutional public trial right is to apply the same standard of prejudice, i.e., presumed prejudice, on collateral review as on direct appeal. Given the Orange court's rejection of this proposition, Wiatt is mistaken. 152 Wash.2d at 804, 100 P.3d 291. Orange is better read to establish that demonstrating appellate counsel's failure to raise the issue on direct appeal constitutes the showing of "actual and substantial prejudice" necessary for relief on collateral review. But Wiatt's citations to Orange demonstrate that he was well aware of the ineffective assistance issue, even if he misunderstood the standard of review. Wiatt's misstatement of the law does not change the fact that he raised the issue of ineffective assistance of appellate counsel.