196 P.3d 672 (2008)
In the Matter of the Personal Restraint Petition of Robert Charles BONDS, Jr., Respondent.
No. 80995-0.
Supreme Court of Washington, En Banc.
Argued June 24, 2008.
Decided November 26, 2008.
*674 Michelle Luna-Green, Pierce Co. Prosecutor's Office, Tacoma, WA, for Petitioner.
Nancy P. Collins, Washington Appellate Project, Seattle, WA, for Respondent.
Pamela Beth Loginsky, Washington Assoc. of Prosecuting Atty., Olympia, WA, Amicus Curiae on behalf of Washington Association of Prosecuting Attorneys.
C. JOHNSON, J.
¶ 1 We are asked to determine whether, under the facts of this case, we will recognize equitable tolling as an exception to the time bar provided under RCW 10.73.090 and permit Robert Charles Bonds, Jr., to submit an otherwise untimely amended personal restraint petition (PRP). The Court of Appeals applied equitable tolling to allow Bonds to amend his PRP more than one year after his judgment and sentence became final. This permitted Bonds to raise a claim alleging violation of his right to a public trial and the public's right to open court proceedings. The Court of Appeals granted relief, vacated Bonds's convictions, and ordered a new trial. We find that equitable tolling does not apply in these circumstances and reverse the Court of Appeals.

FACTUAL AND PROCEDURAL HISTORY
¶ 2 Bonds was tried and convicted in Pierce County of two counts of attempted first degree murder and one count of unlawful possession of a firearm. During trial, the court admitted redacted out-of-court statements of Bonds's codefendants. Four times during trial, the court closed the proceedings while certain witnesses testified.
¶ 3 Division Two of the Court of Appeals affirmed Bonds's convictions on direct appeal, State v. Miller, noted at 122 Wash.App. 1074 (2004), and the judgment and sentence became final on May 9, 2005. Bonds timely filed a PRP in the Court of Appeals on July 22, 2005, asserting that the out-of-court statements of his codefendants violated his confrontation rights and that appellate counsel was ineffective in not raising that issue. Bonds also requested the assistance of counsel. The State filed its answering brief on October 10, 2005. For reasons unknown, the acting chief judge did not rule on Bonds's petition until May 4, 2006. At that time, the judge found Bonds's PRP was not frivolous, referred the petition to a panel of judges for a decision on the merits, and appointed counsel. The one year time limit on collateral attack under RCW 10.73.090 passed a few days later.
¶ 4 On July 25, 2006, Bonds's counsel moved under RAP 16.4 (PRP grounds for remedy) to submit an amended PRP, adding the claim that the trial court violated Bonds's right to a public trial and the public's right to open court proceedings. The State objected, but a Court of Appeals commissioner granted Bonds's motion. The Court of Appeals denied the State's motion to modify the commissioner's *675 ruling, and this court denied discretionary review, leaving the State free to argue to the Court of Appeals that Bonds did not timely raise the public trial issue. The parties then briefed that issue.
¶ 5 The Court of Appeals held that equitable tolling allowed the court to consider the public trial issue by way of Bonds's otherwise untimely amended PRP, held that Bonds's public trial right was violated, and granted the PRP in a split and unpublished decision. The court reversed Bonds's convictions and remanded for a new trial. In re Pers. Restraint of Bonds, noted at 141 Wash.App. 1032, 2007 WL 3378567 (2007). We granted the State's motion for discretionary review.

ISSUE
Whether equitable tolling permits Bonds to submit an otherwise untimely amended PRP.

ANALYSIS
¶ 6 Under RCW 10.73.090 the time limit for collateral attack of a criminal judgment and sentence is one year after the judgment becomes final.[1] Collateral attack includes the filing of a PRP. RCW 10.73.090 is a mandatory rule that acts as a bar to appellate court consideration of PRPs filed after the limitation period has passed, unless the petitioner demonstrates that the petition is based on one of the exemptions enumerated in RCW 10.73.100.[2] We have upheld the constitutionality of RCW 10.73.090. In re Pers. Restraint of Runyan, 121 Wash.2d 432, 444, 853 P.2d 424 (1993).
¶ 7 Though the appellate rules do not expressly authorize or prohibit amendment to PRPs, we have accepted amendments to a PRP made within the statutory time limit. This discretionary allowance accords with RAP 16.10(c), which permits an appellate court to call for additional briefs at any stage of consideration of a PRP.[3]
¶ 8 The State submits that the time limit in RCW 10.73.090 is a jurisdictional requirement, which precludes application of equitable tolling, and that we should reverse on this basis. We disagree. This court has previously referred to the time limit in RCW 10.73.090 as a statute of limitation. In re Pers. Restraint of Benn, 134 Wash.2d 868, 938-39, 952 P.2d 116 (1998). And the Court of Appeals has expressly held that RCW 10.73.090 functions as a statute of limitation and not as a jurisdictional bar, and is thus subject to the doctrine of equitable tolling. In re Pers. Restraint of Hoisington, 99 Wash.App. 423, 431, 993 P.2d 296 (2000). We reject the contention that the statute is jurisdictional and address whether equitable tolling applies in this case.
¶ 9 We begin our analysis by looking to the statute. Equitable tolling of a *676 statute of limitation is appropriate when consistent with the policies underlying the statute and the purposes underlying the statute of limitation. The purpose underlying the time limit in RCW 10.73.090 is to manage the flow of post-conviction collateral relief petitions by requiring collateral attacks to be brought promptly. Limiting attacks to a one-year period, except in instances provided in RCW 10.73.100, also promotes finality of judgments. Here, we must determine whether application of equitable tolling in these circumstances would be consistent with the purposes of RCW 10.73.090. Case law from this court is instructive.
¶ 10 Equitable tolling is a remedy that permits a court to allow an action to proceed when justice requires it, even though a statutory time period has elapsed. In re Pers. Restraint of Carlstad, 150 Wash.2d 583, 593, 80 P.3d 587 (2003). It acts as an exception to the statute of limitations that should be used sparingly and does not extend broadly to allow claims to be raised except under narrow circumstances. We have adopted a framework to determine when equitable tolling should apply in the civil context, and all three divisions of the Court of Appeals have incorporated this analysis into criminal cases. Millay v. Cam, 135 Wash.2d 193, 206, 955 P.2d 791 (1998). In Millay, a civil case, we established that equitable tolling is allowed when justice requires and when the predicates for equitable tolling are met. The predicates we identified there were bad faith, deception, or false assurances by the defendant and the exercise of diligence by the plaintiff. We agree that these same factors apply in the criminal context.
¶ 11 We have previously touched on application of equitable tolling in the criminal context. Carlstad, 150 Wash.2d 583, 80 P.3d 587. In Carlstad, a petitioner gave a PRP to prison officials for mailing days before the one-year time limit was to expire. Due to delay in mailing, the PRP was not filed until after expiration of the statutory deadline. We declined to decide the issue of equitable tolling, the form of relief requested as an alternative to adoption of a mailbox rule. We did, however, recognize that equitable tolling was unavailable under the circumstances because the petitioner did not demonstrate that the prison officials acted in bad faith, deception, or false assurances. This reasoning is consistent with the narrowness of the equitable tolling exception.
¶ 12 The State argues that the Court of Appeals, by accepting Bonds's amended PRP after the filing deadline, undermined principles of finality and acted contrary to Benn, 134 Wash.2d 868, 952 P.2d 116. In Benn, the petitioner filed a timely PRP, then moved to supplement his petition with new issues nearly three years later. Noting that the appellate rules had no analog to CR 15(c) allowing an amendment to relate back to the date of the original pleading, and further noting that RAP 18.8(a) (authorizing waiver or alteration of court rules) does not apply to a statute of limitation like RCW 10.73.090, we held the newly raised theories were time-barred. Though Benn is factually analogous to the present case and supports our conclusion here, in Benn, petitioner did not assert application of equitable tolling.
¶ 13 However, in both Carlstad and Benn, we adhered rather strictly to the statute of limitation applicable to post-conviction collateral attack. And though we did not foreclose equitable tolling in Carlstad, we suggested a rule, synonymous to the rule in civil cases, which would make equitable tolling available only in instances where petitioner missed the filing deadline due to another's malfeasance. The Court of Appeals, however, has applied equitable tolling less sparingly. See Hoisington, 99 Wash.App. 423, 993 P.2d 296 (equitably tolling one-year time limit where court failed on three occasions to address petitioner's meritorious attack on his guilty plea); State v. Littlefair, 112 Wash.App. 749, 51 P.3d 116 (2002), review denied, 149 Wash.2d 1020, 72 P.3d 761 (2003) (applying equitable tolling in split decision, where, due to mistakes by petitioner's attorney, the court, and the immigration service, petitioner was unaware until after a one-year time limit that he would be deported if he pleaded guilty).
¶ 14 Here, Bonds contends that equitable tolling should apply because the court's inaction in reviewing his PRP to determine its merit left him in a situation *677 where his counsel, once appointed, could not discover the public trial issue until after the statute of limitation had run.[4] We first note that there is no constitutional right to counsel in post-conviction collateral attacks. And, as the State points out, counsel will be provided at state expense only after the chief judge has determined that the issues raised by the petition are not frivolous. In such cases, the issues generally are limited to those raised in the petition and identified by the court as having some merit. Moreover, while Bonds's contention may be true, nothing prevented Bonds from timely asserting the public trial issue himself. Indeed, we require a pro se petitioner to comply with applicable rules and statutes and hold them to the same responsibility as an attorney.
¶ 15 We are reluctant to apply exceptions to legislative time limits. Adopting a rule for equitable tolling in the criminal context that mirrors the predicates in the civil context is consistent with the purposes of RCW 10.73.090 and this court's rather strict adherence to the statute of limitation in Benn and Carlstad. Applying equitable tolling to Bonds's situation, however, would undercut finality of judgments, encourage untimely filing and amendments to collateral attacks, and unjustifiably expand the narrow equitable tolling exception.
¶ 16 Bonds has not met the high burden of demonstrating that the amended PRP was untimely due to bad faith, deception, or false assurances. At most, Bonds claims that he did not identify the public trial claim on his own and that the Court of Appeals delayed the appointment of counsel.
¶ 17 We hold that application of the narrow equitable tolling exception under the facts of this case does not serve the purpose of RCW 10.73.090. Therefore, Bond's amended PRP was untimely and we do not reach the public trial issue. We reverse the Court of Appeals and reinstate Bonds's convictions.[5]
WE CONCUR: SUSAN OWENS, BARBARA A. MADSEN, and JAMES M. JOHNSON, JJ.
ALEXANDER, C.J. (concurring).
¶ 18 I agree with the result that the majority reaches. I write separately, however, because I do not agree with its conclusion that the remedy of equitable tolling is available in criminal cases only when bad faith, deception, or false assurances caused the petitioner's late filing. That holding, in my judgment, places too high a burden on petitioners such as Robert Charles Bonds, Jr. Even assuming, however, that equitable tolling may apply in circumstances other than *678 where bad faith, deception, or false assurances are present, it is my view that the facts here do not justify tolling. I say that because the ten-month delay by the Court of Appeals in acting on Bonds's personal restraint petition was not an extraordinary circumstance and certainly is far less egregious than the circumstances in State v. Littlefair, 112 Wash.App. 749, 51 P.3d 116 (2002), and In re Personal Restraint of Hoisington, 99 Wash.App. 423, 993 P.2d 296 (2000), cases cited by the dissent in which equitable tolling has been applied.
I CONCUR: Justice MARY E. FAIRHURST.
SANDERS, J. (dissenting).
¶ 19 After Robert Charles Bonds, Jr.'s convictions of attempted first degree murder and unlawful possession of a firearm were upheld by Division Two of the Court of Appeals and the judgment became final on May 9, 2005, Bonds timely filed a personal restraint petition (PRP) on July 22, 2005. However the acting chief judge did not rule on the petition until May 4, 2006, almost 10 months later. The petition was then referred to a panel of judges, and counsel was appointed for Bonds. Only a few days later the one year time limit on collateral attack under RCW 10.73.090[1] passed.
¶ 20 The Court of Appeals allowed Bonds to amend his PRP on July 25, 2006 to add the claim the trial court violated his right to a public trial, but our majority reverses, holding "equitable tolling does not apply in these circumstances." Majority at 674. The majority asserts applying equitable tolling here "would undercut finality of judgments, encourage untimely filing and amendments to collateral attacks, and unjustifiably expand the narrow equitable tolling exception." Majority at 677. I disagree. A court's mea culpa is the epitome of equity.
¶ 21 "The doctrine of equitable tolling permits a court to allow an action to proceed when justice requires it, even though a statutory time period has nominally elapsed." State v. Duvall, 86 Wash.App. 871, 874, 940 P.2d 671 (1997). The majority recognizes the time limit for collateral attack of a criminal judgment and sentence is one year after the judgment becomes final under RCW 10.73.090 and amendments to a PRP are permitted during this time. Majority at 675-76. The majority also recognizes equitable tolling is allowed when justice requires it. Majority at 676. But is not this injustice?
¶ 22 "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). Bonds fulfilled these elements. He diligently filed his PRP after the judgment was finalized and requested an attorney to ensure everything was done properly. The majority asserts counsel is provided only after the chief judge determines the issues raised in the PRP are not frivolous and "nothing prevented Bonds from timely asserting the public trial issue himself." Majority at 677. But as a pro se litigant Bonds did not possess the skill of a lawyer to recognize the issue of whether he received a public trial. Additionally the Court of Appeals's lack of action for 10 months was an extraordinary obstacle standing in Bonds's way. If the Court of Appeals acted timely, Bonds's appointed attorney would have discovered the issue long before the one year time limit expired.
¶ 23 The majority asserts equitable tolling was applied sparingly in State v. Littlefair, 112 Wash.App. 749, 762, 51 P.3d 116 (2002), and In re Pers. Restraint of Hoisington, 99 Wash.App. 423, 431, 993 P.2d 296 (2000). Majority at 676-77. In Littlefair the court found equitable tolling was appropriate because Littlefair's lack of knowledge about his likely deportation "was not due to any fault or omission on his part; rather, it was due to a series of mistakes by his attorney, the *679 court, and arguably the [Immigration and Naturalization Service]." Littlefair, 112 Wash.App. at 762, 51 P.3d 116. In Hoisington equitable tolling was appropriate because Hoisington continued to raise an issue during his case, and the court continued to ignore it. Hoisington, 99 Wash.App. at 431-32, 993 P.2d 296. The fault was "with the court for not addressing his claim when he first raised it in his direct appeal." Id. at 431-32, 993 P.2d 296.
¶ 24 Bonds's case is analogous. Bonds timely filed his PRP and waited nearly 10 months while the Court of Appeals failed to take any action, contrary to its own rules. Bonds was left with only a few days to act after learning his petition would be heard before the one year time limit ran on his collateral attack. The majority describes Bonds's amendment as "an otherwise untimely amended personal restraint petition." Majority at 674. What the majority fails to recognize is Bonds's amended PRP would have been timely if the Court of Appeals had acted in a timely fashion. When a court makes a mistake, equity is required to remedy it. But our majority is "reluctant to apply exceptions to legislative time limits" even when justice so requires. Majority at 677. But isn't that precisely what equitable tolling is all about?
¶ 25 The majority contends "Bonds has not met the high burden of demonstrating that the amended PRP was untimely due to bad faith, deception, or false assurances." Majority at 677. "We hold that application of the narrow equitable tolling exception under the facts of this case does not serve the purpose of RCW 10.73.090." Majority at 677. The majority applies equitable tolling too narrowly. Equitable tolling is appropriate when there is "`bad faith, deception, or false assurances by the defendant, and the exercise of diligence by the plaintiff.'" Duvall, 86 Wash.App. at 875, 940 P.2d 671 (quoting Finkelstein v. Sec. Props., Inc., 76 Wash. App. 733, 739-40, 888 P.2d 161 (1995)). However, case law has not held equitable tolling is appropriate only in those circumstances. Id. Equitable tolling applies generally when justice requires it.
¶ 26 The one year time period in RCW 10.73.090 should have been equitably tolled from the date of his petition (June 22, 2005) to the date the acting chief judge finally ruled on the petition (May 4, 2006). If so, Bonds's amended petition of July 25, 2006 would not be time-barred, and we would reach the public trial issue.
¶ 27 The Court of Appeals found Bonds's right to a public trial and the public's right to access his trial were violated when the trial court closed the courtroom several times without weighing the Bone-Club factors[2] or making specific findings to justify the closures. In re Pers. Restraint of Bonds, noted at 141 Wash.App. 1032, 2007 WL 3378567, at *8-10. A claim that a person's right to a public trial was violated is a question of law reviewed de novo. State v. Easterling, 157 Wash.2d 167, 173-74, 137 P.3d 825 (2006). If a person's right to a public trial is violated, the remedy is reversal and remand for a new trial. In re Pers. Restraint of Orange, 152 Wash.2d 795, 814, 100 P.3d 291 (2004).
¶ 28 Generally, an appellate court will not consider an issue raised for the first time on appeal unless it is a "manifest error affecting a constitutional right." RAP 2.5(a); State v. Tolias, 135 Wash.2d 133, 140, 954 P.2d 907 (1998). "The defendant must identify a constitutional error and show how the alleged error actually affected the defendant's rights at trial." State v. Kirkman, 159 Wash.2d 918, 926-27, 155 P.3d 125 (2007). One way *680 the error is "manifest" is if actual prejudice is shown. State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995). The defendant must show the "error had practical and identifiable consequences in the trial of the case." State v. Lynn, 67 Wash.App. 339, 345, 835 P.2d 251 (1992).
¶ 29 A defendant has a right to a public trial under the Sixth Amendment of the United States Constitution and article I, section 22 of the Washington Constitution. The public also has a right to access a defendant's trial under article I, section 10 of the Washington Constitution. Seattle Times Co. v. Ishikawa, 97 Wash.2d 30, 36, 640 P.2d 716 (1982); Easterling, 157 Wash.2d at 174, 137 P.3d 825. All stages of courtroom proceedings must "remain open unless the trial court identifies a compelling interest to be served by closure." Easterling, 157 Wash.2d at 178, 137 P.3d 825. A defendant's and the public's right to an open trial is not absolute. State v. Bone-Club, 128 Wash.2d 254, 259, 906 P.2d 325 (1995); Ishikawa, 97 Wash.2d at 36, 640 P.2d 716. Before closing the courtroom to the public the trial court must weigh the five Bone-Club factors and enter specific findings which justify the closure. Bone-Club, 128 Wash.2d at 258-59, 906 P.2d 325. A court must address each of the five factors before closing the courtroom. Id. at 261, 906 P.2d 325. This standard for closing a courtroom is applied to both section 10 (public access) and section 22 (public trial right) of article I of the Washington Constitution. Id. at 259-60, 906 P.2d 325.
¶ 30 A defendant does not waive his right to a public trial if he fails to object. Id. at 261, 906 P.2d 325. A court must inform potential objectors of the nature of the asserted interests or else the opportunity to object holds no "`practical meaning.'" Id. (quoting Ishikawa, 97 Wash.2d at 39, 640 P.2d 716). A defendant does not have a meaningful opportunity to object when the courtroom is summarily closed. Id.
¶ 31 Bonds's trial was closed on four separate occasions. The courtroom was closed to determine a witness's competency to testify, to establish whether a witness would testify, to admonish a witness, and to ascertain if a witness's testimony was admissible.
¶ 32 The trial court first closed the courtroom during the voir dire of witness Keith Harrell to everyone except Harrell's wife, Judy. Report of Proceedings (RP) (Feb. 21, 2002) at 72. The court asked if anyone objected to the closure, and the defense did not object. Id. at 71, 640 P.2d 716. The court found that closing the courtroom during Keith Harrell's testimony was the least restrictive option to protect the privacy of his health issues. Id. at 71-72, 640 P.2d 716. However, the court did not find a serious or imminent threat to Keith Harrell's health issues nor did it weigh his interests with the competing interest of maintaining an open courtroom. This closure violated Bonds's right to a public trial and the public's right to access Bonds's trial.
¶ 33 In the second instance, the courtroom was closed during a hearing to determine if Cory Thomas would invoke his right against self-incrimination. RP (Mar. 7, 2002) at 411, 415-16. The judge asked if anyone objected to closing the courtroom before this hearing, and no one objected. Id. Bonds's attorney concurred with the State's attorney and the other defense attorneys that the courtroom should be closed for the hearing. Id. at 411-12. Even though Bonds concurred, this closure also violated his and the public's constitutional right to an open trial because the court disregarded the Bone-Club factors when it failed to weigh the competing interests or find a serious and imminent threat to Thomas's right.
¶ 34 The courtroom was closed a third time to admonish witness Salena Daniels about her behavior on the witness stand. RP (Mar. 13, 2002) at 944-45. The judge did not ask if anyone objected to closing the courtroom but simply called a recess and summarily dismissed the jury and the people in the gallery to admonish Daniels. Id. at 944. Finally, the courtroom was closed to hear argument on a motion to exclude Judy Harrell's testimony. RP (Mar. 18, 2002) at 3. The judge again summarily dismissed the public from the courtroom without asking if anyone objected. Id.
¶ 35 The trial court did not analyze any of the Bone-Club factors nor did it enter any *681 specific findings to justify closing the courtroom in these two instances. No one was given the opportunity to object nor did the court weigh the competing interests before closing the courtroom. The third and fourth closures were also constitutional errors which violated Bonds's right to a public trial and the public's right to access his trial.
¶ 36 This error was "manifest." See Easterling, 157 Wash.2d at 173 n. 2, 137 P.3d 825 (holding public trial violation is manifest constitutional error). "Prejudice is presumed where a violation of the public trial right occurs." Bone-Club, 128 Wash.2d at 261-62, 906 P.2d 325. Indeed, such error has been recognized as a "`structural defect[]'" under federal law. Sullivan v. Louisiana, 508 U.S. 275, 281, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (quoting Arizona v. Fulminante, 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). It is not subject to harmless error analysis. Bone-Club, 128 Wash.2d at 261-62, 906 P.2d 325. Since prejudice is presumed here, the trial court's failure to engage in a Bone-Club analysis and enter specific findings to justify the closures is a manifest constitutional error, and Bonds can raise this issue for the first time on appeal. This case should be reversed and remanded to the trial court.
¶ 37 Bonds was diligent in timely filing his PRP but was forced to wait for the Court of Appeals to take action. And now the State takes advantage of the court's mistake to urge we deprive Bonds of his day in court on an important issue. If this isn't "inequitable," what is? The Court of Appeals granted equitable relief from its own error and so should we. Furthermore Bonds's right to a public trial was violated. The Court of Appeals decision should be affirmed, and the case should be remanded to the trial court for a new trial.
¶ 38 I dissent.
WE CONCUR: Justice DEBRA L. STEPHENS and Justice TOM CHAMBERS.
NOTES
[1] RCW 10.73.090 reads:

(1) No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.
(2) For the purposes of this section, "collateral attack" means any form of postconviction relief other than a direct appeal. "Collateral attack" includes, but is not limited to, a personal restraint petition, a habeas corpus petition, a motion to vacate judgment, a motion to withdraw guilty plea, a motion for a new trial, and a motion to arrest judgment.
(3) For the purposes of this section, a judgment becomes final on the last of the following dates:
(a) The date it is filed with the clerk of the trial court;
(b) The date that an appellate court issues its mandate disposing of a timely direct appeal from the conviction; or
(c) The date that the United States Supreme Court denies a timely petition for certiorari to review a decision affirming the conviction on direct appeal. The filing of a motion to reconsider denial of certiorari does not prevent a judgment from becoming final.
[2] These exemptions are for newly discovered evidence, convictions under unconstitutional statutes, convictions barred by double jeopardy, convictions obtained with insufficient evidence, sentences in excess of the court's jurisdiction, or significant changes in the law which will apply retroactively to the petitioner's case. RCW 10.73.100.
[3] RAP 16.10(c) reads: "The appellate court may call for additional briefs at any stage of the consideration of the [personal restraint] petition."
[4] The State points out that the Court of Appeals, by stating it delayed review of the PRP for 10 months, may have examined the wrong timeframe. RAP 16.11(a) provides that "[t]he Chief Judge will consider the petition promptly after the time has expired to file petitioner's reply brief." Under RAP 16.10(a)(2), petitioner's reply brief "should be filed within 30 days after the answering brief is served on petitioner." The State filed its answering brief on October 10, 2005. Assuming the State served Bonds that same day, under RAP 16.10(a)(2), Bonds's reply brief should have been filed by November 10, 2005. Instead, Bonds filed his reply brief on December 19, 2005. Nevertheless, under RAP 16.11(a), the time for Bonds to file a reply brief expired November 10, 2005, and the Chief Judge should have considered Bonds's petition promptly after that date. The Chief Judge considered Bonds's petition on May 4, 2006, resulting in a 6 month, rather than a 10 month, delay.
[5] Bonds filed a motion to dismiss the State's motion for discretionary review as being untimely. The Court of Appeals considered Bonds's amended PRP on the merits and filed its decision on November 14, 2007. Under RAP 16.14(c), when the Court of Appeals decides a PRP on the merits, the decision is subject to review by the Supreme Court only by a motion for discretionary review on the terms and in the manner provided in RAP 13.5A. RAP 13.5A refers to RAP 13.5(a), which requires a party to file a motion for discretionary review in the Supreme Court and a copy in the Court of Appeals within 30 days after the decision is filed. The State's pleading was first filed in Division Two of the Court of Appeals on December 14, 2007, but was received and filed with the Supreme Court on December 18, 2007. While the State was technically four days late under RAP 13.5(a), under RAP 18.23, "A pleading will be considered timely filed by the Supreme Court and the Court of Appeals if it is timely filed in any Division of the Court of Appeals or in the Supreme Court." (Emphasis added.) Because the State timely filed its pleading in the Court of Appeals, under RAP 18.23, we hold the motion for discretionary review was timely and deny Bonds's motion to dismiss.
[1] RCW 10.73.090(1) provides,

No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.
[2] The five Bone-Club factors are:

1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a "serious and imminent threat" to that right.
2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.
3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.
4. The court must weigh the competing interests of the proponent of closure and the public.
5. The order must be no broader in its application or duration than necessary to serve its purpose.
State v. Bone-Club, 128 Wash.2d 254, 258-59, 906 P.2d 325 (1995) (alteration in original).