IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34533-5-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| TARA J. AMMONS, | ) | |
| | ) | |
| Respondent. | ) | |

PENNELL, J. — In 2009, Tara Ammons was convicted of theft and possession of controlled substances with intent to deliver. Ms. Ammons's case was handled through a stipulated facts trial. This abbreviated procedure was used as a consequence of Ms. Ammons's failed attempt to divert her charges through a drug court program. Seven years later, Ms. Ammons successfully moved to vacate the drug court agreement, convictions, and judgment and sentence. She argued her convictions were invalid because she had not been aware of potential immigration consequences at the time she entered into drug court and agreed to the possible adverse outcome of a stipulated facts trial.

Ms. Ammons's case is uniquely sympathetic. Having been adopted as a baby by parents who were citizens of the United States, Ms. Ammons reasonably believed she was

a U.S. citizen and did not find out otherwise until after she had entered drug court. When

presented with Ms. Ammons's motion to vacate, the trial court found Ms. Ammons's

equities compelling and granted relief. The court reasoned Ms. Ammons's convictions,

by way of a stipulated facts trial, were predicated on a mutual mistake regarding

immigration status. The court also excused Ms. Ammons's failure to file a motion to

vacate within the standard one-year time frame based on equitable tolling.

Although the equities favoring Ms. Ammons are compelling, we find no legal

basis to sustain the trial court's disposition. Whatever merits Ms. Ammons's substantive

claims may have regarding mutual mistake, her motion to vacate was not timely. The

record contains no factual basis for equitable tolling. The trial court's order to vacate is

therefore reversed.

## BACKGROUND

In May 2007, Tara Ammons was charged with two counts of theft and two counts

of possession of a controlled substance with intent to deliver. Hoping to deal with her

drug addiction, Ms. Ammons opted to enter drug court. The drug court agreement

specified Ms. Ammons was waiving a number of constitutional and statutory rights,[1] and

---

[1] These are the right to: (1) a jury trial, (2) hear and question witnesses, (3) call witnesses on your own behalf, (4) cross-examine the state's witnesses, (5) present evidence, (6) testify or not testify, (7) a CrR 3.5 or CrR 3.6 hearing, and (8) a speedy trial.

2

that if she violated any part of the drug court agreement her case would be adjudicated solely on the basis of the police reports and other materials submitted by the prosecutor. Ms. Ammons would have no right to call witnesses or present further evidence. Ms. Ammons entered drug court on January 11, 2008.

While the exact date is unclear, by at least March 28, 2008, Ms. Ammons learned she was not a U.S. citizen. Ms. Ammons had been adopted from Mexico in 1972 when she was five months old. At the time of her adoption, Ms. Ammons's parents were mistakenly informed by legal counsel that Ms. Ammons became a U.S. citizen upon adoption. The Ammons family had no reason to doubt this information. Ms. Ammons grew up in California, attended public schools, received a social security number, voted in elections, married twice, and had three children. Ms. Ammons, now in her mid-40s, only learned she was not a citizen after her biological sister, who had also been adopted, was denied a U.S. passport.

Although Ms. Ammons's immigration status made her technically ineligible for drug court, the presiding judge allowed her to stay in the program. This decision was favorable to Ms. Ammons because she maintained the possibility of avoiding a criminal conviction. But, unfortunately, things did not work out. In December 2008, Ms. Ammons was charged with misdemeanor assault. As a result of this new charge, Ms.

3

Ammons was terminated from drug court in January 2009. Three months later, she was found guilty of the original four charges after a stipulated facts trial.

Ms. Ammons was placed in removal proceedings in 2011. For reasons that are unclear, the proceedings were terminated and Ms. Ammons was released from immigration custody. Despite this favorable outcome, it appears Ms. Ammons spent most of her time since 2011 in custody for various criminal offenses.

In 2015, Ms. Ammons was back in immigration custody. At this point, she received a psychological examination. The purpose of the examination was to explore Ms. Ammons's competence to represent herself in immigration court. The examiner found Ms. Ammons to be competent, but an immigration judge disagreed. In a brief, written order, the immigration judge declared Ms. Ammons incompetent for purposes of self-representation and appointed legal counsel. Removal proceedings were then reopened in July 2015. In September, Ms. Ammons received legal assistance to explore post-conviction relief.

On March 14, 2016, Ms. Ammons filed a CrR 7.8(b) motion in Okanogan County Superior Court to vacate the drug court agreement and her 2009 judgment and sentence. Ms. Ammons relied on *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), RCW 10.73.100(6), *In re Personal Restraint of Yung-Cheng Tsai*, 183 Wn.2d

4

91, 351 P.3d 138 (2015), CrR 4.2, CrR 7.8(b)(1), RCW 10.40.200, and equitable tolling to support her motion.

The trial court granted Ms. Ammons's motion. The court found *Padilla* and RCW 10.40.200 inapplicable because there was no guilty plea. However, the court determined Ms. Ammons was entitled to relief under CrR 7.8(b)(1). The court reasoned there had been a mutual mistake of fact when Ms. Ammons entered into drug court and waived her rights. Given this circumstance, "fairness and equity" warranted the application of CrR 7.8(b)(5). Clerk's Papers (CP) at 12. The trial court also found Ms. Ammons's delay in filing for post-conviction relief was excused by equitable tolling, given Ms. Ammons's struggles with competency and lack of legal counsel. As a result of the trial court's ruling, the drug court agreement, convictions, and judgment and sentence were vacated, but the original charges were not dismissed. The State appeals.

## ANALYSIS

The dispositive issue in this case is timing. Under RCW 10.73.090, any request for post-conviction relief (other than a direct appeal) must be filed within one year after a judgment becomes final. Ms. Ammons's judgment became final in 2009. But no motion was filed until 2016. The only way Ms. Ammons could avoid having her motion dismissed as untimely was if she could establish equitable tolling or an exception to the

one-year time bar under RCW 10.73.100. *In re Pers. Restraint of Bonds*, 165 Wn.2d 135, 196 P.3d 672 (2008). As discussed below, neither applies.

*Equitable tolling*

Equitable tolling "'permits a court to allow an action to proceed when justice requires it, even though a statutory time period has nominally elapsed.'" *State v. Robinson*, 104 Wn. App. 657, 667, 17 P.3d 653 (2001) (quoting *State v. Duvall*, 86 Wn. App. 871, 874, 940 P.2d 671 (1997)). We review legal issues regarding equitable tolling de novo. *See Corjasso v. Ayers*, 278 F.3d 874, 877 (9th Cir. 2002). As the party seeking relief, Ms. Ammons bears the burden of establishing the applicability of equitable tolling. *Bonds*, 165 Wn.2d at 144.

Because the law already permits a variety of methods for challenging wrongful convictions, equitable tolling has a very narrow application in the criminal context. *In re Pers. Restraint of Haghighi*, 178 Wn.2d 435, 448, 309 P.3d 459 (2013). One of the elements required for a successful claim of equitable tolling is diligence. *Id.* at 447; *Bonds*, 165 Wn.2d at 141. To show diligence, a litigant must demonstrate they sought relief promptly upon learning the basis for doing so. At most, the one-year statutory deadline for seeking post-conviction relief will be tolled up to the point in time when a litigant first discovered the issue forming the basis for relief. *State v. Littlefair*, 112 Wn.

6

App. 749, 762-63, 51 P.3d 116 (2002).

Division Two's decision in *Littlefair* provides an example of how a post-conviction litigant claiming inadequate immigration advice might establish diligence and equitable tolling. Mr. Littlefair is Canadian. When he pleaded guilty to manufacturing marijuana, he was not advised of possible immigration consequences as required by RCW 10.40.200. Mr. Littlefair did not learn about the immigration consequences until he was served with a notice of removal approximately two years after his plea. Less than one year after receiving this notice, Mr. Littlefair filed for post-conviction relief. In a divided ruling, Division Two held Mr. Littlefair met the diligence requirement of equitable tolling. *Littlefair*, 112 Wn. App. at 769.

Ms. Ammons's case compares unfavorably to *Littlefair*. Unlike what happened in *Littlefair*, neither the court nor defense counsel failed to provide Ms. Ammons with statutorily required immigration advice. Because Ms. Ammons never pleaded guilty, no notice was required under RCW 10.40.200.[2] In addition, the record does not establish Ms. Ammons filed for relief within one year after learning about the immigration

---

[2] In addition, it cannot fairly be said that defense counsel was ineffective in failing to discuss immigration consequences with Ms. Ammons at the time she signed the drug court agreement. At that point in time, there was no reason to believe Ms. Ammons was not a U.S. citizen.

7

consequences of her case. Ms. Ammons discovered she was not a U.S. citizen while still participating in the drug court proceedings. Once her status became known, Ms. Ammons's attorney was aware of potential immigration consequences. Nothing in the record indicates Ms. Ammons's attorney failed to share this information with her. Accordingly, to the extent Ms. Ammons was eligible to challenge her drug court agreement on the basis of mutual mistake, she held all the necessary information prior to her stipulated facts trial and convictions.

Ms. Ammons protests that she should be excused from failing to seek relief earlier due to incompetence. However, the trial court specifically found Ms. Ammons competent during her drug court participation. No error has been assigned to this finding. While Ms. Ammons was subsequently found incompetent for purposes of self-representation by an immigration judge in 2015,[3] nothing in the record indicates when Ms. Ammons lost competence, or why she was incapable of challenging the validity of her drug court agreement during the original trial process.[4]

---

[3] Although not briefed by the parties, this appears to be a heightened standard of competence. *See* CP at 148.

[4] Any suggestion that Ms. Ammons was suffering from long-term incompetence is belied by her 2015 psychological evaluation that notes during a 2011 mental health assessment Ms. Ammons was "reported to have a Global Assessment of Functioning (GAF) score of 70, which suggests [she] was functioning fairly well overall." CP at 149.

8

In short, the facts produced by Ms. Ammons fail to demonstrate the diligence required for equitable tolling. Ms. Ammons's own declaration reveals the gaps in her proof. Ms. Ammons's declaration sets forth her personal history and the circumstances leading up to her motion for post-conviction relief. The declaration is lucid and does not suggest any lack of understanding or memory problems. In the declaration, Ms. Ammons does not indicate she delayed filing for post-conviction relief because of incompetence. Instead, she states the delay was because she lacked funds to hire private counsel. This all too common obstacle is not a sufficient basis for the exceptional remedy of equitable tolling.

*RCW 10.73.100*

Without equitable tolling, the only possible basis for affirming the trial court would be if Ms. Ammons's case fell under one of RCW 10.73.100's exceptions to the one-year post-conviction time limit. Ms. Ammons bears the burden on this issue. *See In re Pers. Restraint of Turay*, 150 Wn.2d 71, 85-86, 74 P.3d 1194 (2003).

In her briefing to this court, Ms. Ammons does not argue for application of any of the exceptions listed in RCW 10.73.100. However, during oral argument, counsel proposed that RCW 10.73.100(6) excuses Ms. Ammons's delay in seeking relief because of the significant change in the law wrought by *Padilla v. Kentucky* and made retroactive

to final convictions under *In re Personal Restraint of Yung-Cheng Tsai*. Like the trial court, we find *Padilla* and *Tsai* inapplicable.

Our analysis is guided primarily by *Tsai*. That case addressed an attorney's duty to advise clients of adverse immigration consequences in the context of guilty pleas. *Tsai* acknowledged that defense attorneys in Washington have long known of their plea related immigration obligations under RCW 10.40.200. However, prior to the U.S. Supreme Court's decision in *Padilla*, Washington courts had not recognized that an attorney's failure to abide by RCW 10.40.200 could constitute a constitutional deficiency, justifying relief from conviction. *Tsai*, 183 Wn.2d at 103. Given the disconnect between a lawyer's well known duties and relief available to criminal defendants, *Tsai* held that the avenue for relief announced by the U.S. Supreme Court in *Padilla* would be applied retroactively to post-conviction cases pursuant to RCW 10.73.100(6).

*Tsai* only extended RCW 10.73.090's one-year filing deadline because Washington had already required attorneys to provide immigration advice in the guilty plea context. Given the State of Washington's unique statutory provision, *Tsai* distinguished the U.S. Supreme Court's decision in *Chaidez v. United States*, 568 U.S. 342, 133 S. Ct. 1103, 185 L. Ed. 2d 149 (2013), which held *Padilla* created a new rule of federal constitutional procedure and was not retroactive to already final cases.

10

Because this case does not involve a guilty plea, it is governed by the U.S. Supreme Court's retroactivity analysis in *Chaidez*, not *Tsai*. At best, Ms. Ammons might be heard to argue that *Padilla*, together with *Tsai*, recognized a new rule for constitutionally effective assistance of counsel that requires pursuit of immigration friendly options for noncitizen clients. But if that were true, any such rule would not apply retroactively to pre-*Padilla/Tsai* cases such as Ms. Ammons's. There is no statute similar to RCW 10.40.200 directing defense attorneys to advocate for immigration friendly outcomes in criminal cases. Accordingly, to the extent *Tsai* and *Padilla* can be read as recognizing new constitutional duties for defense counsel, *Chaidez* prohibits retroactive enforcement under RCW 10.73.100(6). *See In re Pers. Restraint of Gentry*, 179 Wn.2d 614, 626, 316 P.3d 1020 (2014) (retroactivity under RCW 10.73.100(6) generally governed by federal standard).

## CONCLUSION

The equities in Ms. Ammons's case are strong. Regardless of Ms. Ammons's criminal record, it would appear unjust for Ms. Ammons to be deported simply because an attorney failed to properly process her adoption papers. If *Padilla* can provide relief to criminal defendants who are denied adequate immigration advice, it would seem babies who have been involuntarily brought into this country for adoption should also be entitled

11

No. 34533-5-III
*State v. Ammons*

to some sort of recourse for ineffective immigration assistance. But whatever remedy can or should exist does not lie here. The trial court's order to vacate is reversed. Ms. Ammons's motion to not award appellate costs is granted.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Pennell, J.

WE CONCUR:

Lawrence-Berrey, A.C.J.

Korsmo, J.

12