FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 JUN 11 AM 9: 41




IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) | No. 76350-4-I |
| MICHIEL OAKES, | ) ) | DIVISION ONE |
| | ) | UNPUBLISHED OPINION |
| Petitioner. | ) ) ) | FILED: June 11, 2018 |

BECKER, J. — This personal restraint petition is dismissed because it was not timely filed.

Petitioner Michiel Oakes was convicted of murdering Theodore Mark Stover. The underlying facts are set forth in this court's opinion in Oakes' direct appeal. State v. Oakes, No. 66229-5-I (Wash. Ct. App. May 18, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/662295.pdf, review denied, 184 Wn.2d 1024 (2015). To summarize, Oakes arrived at Stover's home, armed and wearing a bulletproof vest. Oakes shot Stover and left the home with his body. Stover's body was never recovered. Oakes was arrested and charged with first degree murder. At trial, Oakes claimed self-defense. After a four-week trial and four days of deliberation, a jury convicted Oakes as charged. The conviction was affirmed on direct appeal. Oakes has now filed a personal restraint petition.

## TIMELINESS OF PETITION

The State contends the petition must be dismissed as untimely under the one-year time bar of RCW 10.73.090(1): "No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction."

The mandate in the criminal case against Oakes was issued on January 15, 2016, making the judgment final on that date. RCW 10.73.090(3)(b). That day was a Sunday and the next day was a holiday. Oakes had to file his petition no later than January 17, 2017, to comply with the statutory one-year limit. RAP 18.6(a). Oakes mailed the petition on Tuesday, January 17, 2017. It reached this court and was filed on January 18, 2017, one day after the time limit expired.

Oakes contends the time for filing should be extended under RAP 18.8(b). This is not permitted. The one-year time limit of RCW 10.73.090 is a statutory limitation period. Courts do not have the authority to waive statutory limitation periods, as opposed to time limits set down in court rules. State v. Robinson, 104 Wn. App. 657, 665, 17 P.3d 653, review denied, 145 Wn.2d 1002 (2001). The statutory time limit is a mandatory rule that acts as a bar to appellate court consideration of collateral attacks, unless the petitioner shows that an exception under RCW 10.73.100 applies. Robinson, 104 Wn. App. at 662. Oakes' untimely filing does not come within any of the exceptions.

Alternatively, Oakes contends the time limit was tolled. The one-year limit in RCW 10.73.090(1) is subject to equitable tolling. In re Pers. Restraint of Bonds, 165 Wn.2d 135, 143, 196 P.3d 672 (2008). Equitable tolling is an exception to a statute of limitations that should be used "sparingly." Bonds, 165 Wn.2d at 141. The predicates for equitable tolling are bad faith, deception, or false assurances, along with the exercise of diligence by the party who seeks to be exempted from the time limit. Bonds, 165 Wn.2d at 141; Robinson, 104 Wn. App. at 667. Equitable tolling should not be applied to a garden variety claim of excusable neglect. Robinson, 104 Wn. App. at 667, 669.

Oakes did not attempt to file his petition until January 17, 2017, the last day for timely filing. The only evidence in the record explaining why he did not achieve filing on that day is a declaration submitted by a legal assistant for Oakes' attorney, whose office is in Tacoma. According to the legal assistant, he tried to file by e-mail at some unspecified time during the day but was unable to do so for unspecified reasons. The legal assistant declares that he contacted this court by telephone at some unspecified time and was told that filing by mail would suffice as timely filing if it was postmarked on January 17. The legal assistant also contacted a legal messenger service at some unspecified time and learned that it was too late to get the petition delivered by messenger from Tacoma to Seattle. The legal assistant mailed the petition by overnight mail. It was received by this court the next morning at approximately 9 a.m. The petition had many blanks for citations to the record, and it was not verified by Oakes.

These are hallmarks of a petition that was still a work in progress when the deadline for filing arrived.

The legal assistant's declaration states in full as follows:

> On January 17, 2017, after unsuccessfully attempting to file the PRP via e-mail, I verified with the Court of Appeals, Division I via a telephone conversation with a court clerk that a timely postmarked USPS mailing of the PRP for Michiel Oakes would suffice as showing timely filing.
> After verifying with ABC Legal Messenger that they would not be able to deliver the PRP to Seattle from Tacoma before the court closed, I placed the PRP in an Express Mail Overnight envelope and mailed the original to the court, with a copy to the Skagit County Prosecuting Attorney's Office on January 17, 2017. I printed out a copy of the USPS transaction history that shows mailing of the envelope to the court on 1/17/17 and receipt on January 18, 2017 at 08:56:00.

Oakes contends the one-year deadline was equitably tolled by the court clerk's alleged assurance that his petition would be timely if received by mail the day after the deadline.

In Robinson, this court addressed a similar situation, untimely filing of a motion to withdraw a guilty plea. The motion was sent to the court by priority mail three days before the deadline, which happened to be on a Friday. A copy mailed at the same time to the prosecuting attorney arrived on the Friday, but the motion mailed to the court was file stamped the next Monday. We refused to adopt a mailbox rule or to find substantial compliance.

Robinson also argued equitable tolling. She asserted that she was diligent in pursuing her cause "'and but for either the lateness of the mail or the failure of the clerk to stamp the motion as filed, she would have filed the motion before the expiration date.'" Robinson, 104 Wn. App. at 667. We rejected this

argument. "Failing to allow for the possibility of postal delay when a statutory time limit is three days away appears to us to be garden variety excusable neglect." Robinson, 104 Wn. App. at 668-69.

Just as we rejected equitable tolling in Robinson for foreseeable postal delay, we now reject equitable tolling for foreseeable difficulties with electronic submission. Oakes' failure to meet the deadline is attributable to his failure to anticipate that immediate delivery by e-mail might not be possible. Oakes knew January 17 was the last day and nevertheless chose to wait until January 17 to attempt filing. On that last day, he learned that e-mail delivery was not available. By that time, the backstop plan of filing by legal messenger was also not available. Any assurance Oakes may have received from a court clerk does not justify equitable tolling under these circumstances. It is not as if, but for his conversation with the clerk, he would have filed the petition on January 17. He was unable to file on January 17 due solely to his own neglect in waiting until the last minute.

## MERITS OF PETITION

Even if Oakes' petition had been timely filed, his claims would fail for lack of merit.

When considering a personal restraint petition, this court "will reach the merits of a constitutional issue when the petitioner demonstrates that the alleged error gives rise to actual prejudice, and will reach the merits of a nonconstitutional issue when the claimed error constitutes a fundamental defect which inherently results in a complete miscarriage of justice." In re Pers.

*Restraint of Cook*, 114 Wn.2d 802, 813, 792 P.2d 506 (1990). "After establishing the appropriateness of collateral review, a petitioner will be entitled to relief only if he can meet his ultimate burden of proof, which, on collateral review, requires that he establish error by a preponderance of the evidence." *Cook*, 114 Wn.2d at 814.

Disclosure of Evidence

Oakes alleges the State failed to disclose two pieces of exculpatory evidence that would have strengthened his claim of self-defense.

The prosecutor has an affirmative duty to learn of and disclose any exculpatory or impeachment evidence known to the prosecution or police investigators that is material to guilt or punishment. *Strickler v. Greene*, 527 U.S. 263, 280-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999). Such disclosure is required under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). To establish a *Brady* violation, a defendant must demonstrate that the evidence at issue is favorable to him, either because it is exculpatory or because it is impeaching, that the evidence was suppressed by the State, either willfully or inadvertently, and he was prejudiced. *State v. Mullen*, 171 Wn.2d 881, 895, 259 P.3d 158 (2011). Evidence is material and therefore must be disclosed under *Brady* only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *In re Pers. Restraint of Gentry*, 137 Wn.2d 378, 396, 972 P.2d 1250 (1999).

Oakes claims the State should have disclosed evidence that Stover had firearms stored on his property on the day of his death. Oakes' theory of self-

defense depended on convincing a jury that Stover attempted to shoot him when Oakes arrived at his home. Contrary to this claim, there is no evidence that Stover had firearms on his property. Oakes has misinterpreted testimony in the record of a separate civil proceeding that occurred in 2012, involving the distribution of Stover's estate. See generally In re Estate of Stover, 178 Wn. App. 550, 315 P.3d 579 (2013), review denied, 180 Wn.2d 1005 (2014).

The estate proceeding included evidence that a sizable check from Stover to his fiancée was found on Stover's desk after his death. Oakes alleges the State committed a Brady violation by failing to disclose information about the check and its placement on the desk. According to Oakes, it is "entirely consistent with the defense theory" that Stover wrote the check to his fiancée on the morning he lured Oakes to his home to kill him because he wanted to make sure his fiancée was taken care of. He argues that he could have used this information to show that Stover intended and expected to attack Oakes on the morning of October 28, 2009. But the check was dated more than two months before Stover's death, undermining the inference that Stover prepared it in anticipation of combat. This inference is too speculative to be exculpatory.

To support the alleged Brady violations, Oakes has offered only erroneous claims and unfounded inferences. He has not established that exculpatory evidence existed or that it could have affected the trial outcome.

Prosecutorial Misconduct

In closing argument in the criminal trial of Oakes, the prosecutor remarked that Stover "was that kind of man that followed those rules." The prosecutor

twice repeated that Stover followed the rules. The prosecutor was referring to the fact that Stover had given up his firearms and was avoiding contact with his ex-wife in compliance with a domestic violence protection order. Oakes argues that he is entitled to a new trial because the prosecutor's statements were not supported by the record. According to Oakes, Stover's behavior as shown by the record was not that of a man who follows rules.

Oakes did not object to the prosecutor's argument at trial. Failure to object at trial constitutes a waiver of a claim of prosecutorial misconduct unless it is established that the misconduct was so flagrant and ill-intentioned that an instruction would not have cured the prejudice. In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). In this case, an instruction to the jury to disregard the remarks would have cured any potential prejudice. The claim of misconduct has been waived.

Ineffective Assistance of Counsel

Oakes cites four instances which he claims demonstrate ineffective assistance by defense counsel at trial. All of them concern counsel's failure to call expert witnesses.

"To demonstrate ineffective assistance of counsel, a defendant must make two showings: (1) defense counsel's representation was deficient, _i.e._, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, _i.e._, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different."

State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). There is a strong presumption that counsel's representation was effective. McFarland, 127 Wn.2d at 335. "The decision to call a witness is generally a matter of legitimate trial tactics." State v. Byrd, 30 Wn. App. 794, 799, 638 P.2d 601 (1981).

Oakes first argues that counsel should have called a ballistics expert to testify that the bullet removed from Oakes' bulletproof vest was not fired from the firearm in Oakes' possession at the time of his arrest. Such evidence, he claims, would have tended to prove that Stover shot Oakes. But the State's own ballistic expert had already concluded that the bullet in Oakes' vest did not match the firearm found on Oakes at the time of his arrest. An independent expert report would have been duplicative of the report already provided by the State's ballistic expert. Counsel's failure to call an independent expert was neither unreasonable nor prejudicial.

Second, Oakes contends that counsel should have retained an expert witness to dispute the State's evidence regarding rigor mortis. At trial, Oakes testified that he carried Stover's body to a dock and dumped it into the Swinomish Channel. The State presented evidence that the body, stiffened by rigor mortis, would have been difficult to carry. The State argued that Oakes lied about dumping the body at the dock "because he doesn't want us to find the body. The body will tell the story that he doesn't want us to hear." Oakes contends an expert witness would have testified that the time line for when rigor mortis would be most pronounced was not precise and the onset of rigor mortis is subject to a number of factors. The State's witness conceded these points in his

9

trial testimony. Thus the testimony of another expert witness would not have added new information.

Third, Oakes argues that his trial counsel should have called an oceanography expert to explain why law enforcement agents were not able to find Stover's body in the Swinomish Channel, where Oakes claims to have dumped it. Oakes declares that counsel discussed retaining an oceanographic expert but did not believe the issue was critical.

The State presented evidence that law enforcement officers tried very hard to find Stover's body, including utilizing cadaver dogs, helicopters, boats and dive teams. At best, an expert called by Oakes could have testified that tidal forces could have moved the body beyond the search area. Such evidence would not have proved that Oakes was telling the truth about what he did with Stover's body. Counsel's decision not to stage a battle of experts on this collateral issue was not unreasonable.

Finally, Oakes argues that counsel should have called a psychological expert to testify about his state of mind both before and after the shooting to explain his actions. In 2017, a licensed psychologist evaluated Oakes. In the opinion of the psychologist, Oakes was in a state of extreme emotional distress before the shooting, brought on by threats from Stover; and after the shooting, Oakes was in a dissociative state. Oakes contends that such an evaluation might have convinced a jury that Oakes had a reasonable fear for his life and that his post-shooting actions were confused and random, not premeditated. But at trial, Oakes did not claim diminished capacity, and his theory of self-defense did

not rely on proving extreme emotional distress. Even if Oakes suffered a dissociative episode after the shooting, that fact does not establish that the shooting itself was not premeditated. Considering these circumstances, it was not unreasonable for counsel to refrain from presenting expert testimony about Oakes' state of mind.

In short, even if the petition had been filed on time, it does not establish error. The personal restraint petition is dismissed.

Becker, J.

WE CONCUR: